GEORGE S. NEWBY AND OSCAR SCEARCE, Respondents, v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, November 23, 1885.

1. CONTRACT OF SHIPMENT—NEGLIGENCE—ASSUMING RISKS—CASE ADJUDGED.—In an action for a negligent breach of a contract to transport cattle, wherein it was provided that plaintiff should load and unload the cattle at his own risk, defendant to furnish laborers to assist, who were to be subject to the orders of plaintiff, or his agents, while in that service, the plaintiff did not close the end door of the car, nor ask time to close it before the train started, and a steer of plaintiff escaped through said door and was killed. *Held*, it was the duty of defendant to furnish suitable cars, properly constructed, and in safe condition. But, *under this contract*, it was the duty of plaintiff to close the car door, and if he had opportunity, demand time to close it before the train was started ; and a failure to do so is negligence, and will defeat his right of recovery.

2. PRACTICE—INSTRUCTIONS—HOW TO BE TREATED.—Instructions, not

supported by the evidence, should not be given, and such as do not fairly present the issues should be properly qualified, so as to include or limit them.

APPEAL from Clinton Circuit Court, HON. GEORGE W. DUNN, Judge.

*Reversed and remanded.*

Statement of case by the court.

This was an action to recover the value of a steer, which escaped through the end door of a freight car, in which it had been loaded, at Edgerton, in this state, for transportation over defendant's line to Chicago. It was alleged in the petition that: "defendant recklessly and carelessly placed said cattle in a car of defendant, the end door of which was broken, and in an unsafe condition, and unfastened, and, in consequence of defendant's agents negligently and wrongfully failing and refusing plaintiffs' agents reasonable and proper time to secure said cattle in said car, one of said cattle, of the value of eighty dollars, got out of said end door, being so defective, as aforesaid, and was run over, killed and destroyed by the cars of said defendant, and in consequence thereof, was not delivered at said city of Chicago."

The evidence showed that it was shown on the trial that the cattle were shipped under an agreement that a part should be loaded at Edgerton, and that the car should then be taken to Plattsburg, where the remainder of the cattle would be loaded therein, and the usual shipping contract signed. And it was agreed that a shipping contract was executed at Plattsburg, in which, among other things, it was provided: "And it is further agreed, that the said party of the second part is to load and unload said stock at his own risk, the said Chicago, Rock Island and Pacific Railway Company furnishing laborers to assist, who are to be subject to the orders of the owner, or his agent, while in that service."

Plaintiffs, themselves, did not load the cattle, but their servant, Henry Hawkins, did. He testified as fol-

lows: "I loaded the cattle in controversy for plaintiffs, on the 26th day of August, 1882, at Edgerton. The car in which they were loaded was brought in on the train, and placed at the stock chute, and I loaded the cattle with the assistance of persons who were there. The defendant's agent was not present, and the train men took no part in the loading. After the cattle were loaded, the train was started up before I had time to fasten the end door. I barely had time to fasten the side door. There was no bar at the end door. The car was taken out on the main track to be attached to the remainder of the train which had been left there for the purpose of going on a side track to avoid a passenger train that was then due. I saw the end door before the train started, but had no time to close it. The car was a large stock car, and nearly new. I examined the window, or end door, and saw no evidence that there had ever been a bar across it. This examination was made after the accident. I saw the door open before I loaded the stock, but I had no time to close it. I did not notify the train men that the end door was open, and did not ask them for time to close it. I did not hear the conductor ask if I was ready, nor say to him that I was ready before the train started. I think the conductor was on the opposite side of the car at the time, and that he fastened the door on that side. Before the train started, I heard him say, 'All right, go ahead.' When the train pulled out on the main track, the steer in controversy jumped out of the end door, and was killed. The bottom of the door was about four feet from the bottom of the car."

The train men testified they did not know the door was unfastened or open, nor did anyone request time to fasten it. But, on the contrary, when asked if he was ready to move out, the man in charge of the cattle answered in the affirmative.

The court gave the following instructions for plaintiffs:

"1. It is the duty of defendant to furnish plaintiffs with a car properly constructed, and in safe and proper

condition for the shipment of their cattle, and to afford sufficient time for loading the same, and closing and safely securing the doors of the car, and if the jury believe from the evidence that the end door of the car was broken, and in an unsafe condition, or unfastened, and that the defendant's agents failed to properly secure the same, and failed to afford plaintiffs' agent reasonable time so to do, and, in consequence, the steer mentioned escaped from the car, and was run upon and killed by defendant's cars, they will find for the plaintiffs, and assess their damages at the value of the steer."

The following were given for defendant:

"4.    If the jury believe from the evidence that the conductor of the train asked plaintiffs' agent, after the car was loaded, if he was ready, and he answered to the effect that he was, the verdict must be for defendant."

"5.    If the jury believe that the cattle were shipped from Edgerton with the understanding that the car was to be filled up at Plattsburg, and the contract in evidence was to be there signed by plaintiffs, said Newby or his agent, then said contract relates back to, and governs the parties in loading said cattle at Edgerton."

"8.    Plaintiffs cannot recover upon the ground that the end door had no bar across the opening."

And refused the following for defendant:

"1.    The jury must find for the defendant.

"2.    If the jury find from the evidence that it was agreed by and between plaintiffs and defendant, that plaintiffs should load and unload the cattle in question, or that it was the custom on defendant's road at the time said cattle were loaded into the cars, that the owner should load and unload the live stock at his own risk, the defendant furnishing laborers to assist in so doing, who were, while in such service, subject to the direction and control of the shipper, and that such custom was known to plaintiffs, and that in pursuance of any such agreement or custom, plaintiffs loaded said cattle into said car in evidence, or caused them to be loaded by their agent, and that said agent, knowing that a door in said car was

not shut, did not direct defendant's employes to shut it, nor demand time to shut it himself, the jury must find for defendant."

"3. If the jury believe from the evidence that the cattle in controversy were loaded into cars at Edgerton by plaintiffs' agent, and that defendant's station agent was not present, and that plaintiffs' agent undertook to oversee and direct the loading of said cattle, and was not assisted by, and did not call upon, the employes of the company to assist him, and knowing that the end door was open, did not notify defendant's servants in charge of the train of that fact, or request them to stop the train to enable the door to be closed, the verdict must be for the defendant."

"6. If the plaintiffs' agent did not make every reasonable effort in his power to close the end door, or have it closed, the finding must be for the defendant."

"7. It was not the duty of the defendant to see to it that the end door was closed before the train was started from the chute; that duty devolved upon the plaintiffs."

"10. If the plaintiffs' agent heard the conductor give an order for the train to be started before the doors were closed, and did not thereupon notify the conductor that the door was not closed, or ask for time to close it, the verdict must be for the defendant."

M. A. Low, for the appellant.

I. The instruction given for plaintiffs was not supported by the evidence. It ignores the contract under which the cattle were shipped. It was not the duty of defendant's agents to fasten the car door, but only to give plaintiffs' agent reasonable time to fasten it. To make defendant liable, its agents must have negligently failed to give plaintiffs' agent a reasonable opportunity to close the door, *after having received notice that it was not closed*. (1) A party who asks an instruction on the whole case should so frame it as not to exclude from the jury the points raised by the other party, or arising on his

own evidence. *Clark v. Hammerle*, 27 Mo. 55; *Fitz-gerald v. Hayward*, 50 Mo. 516; *Sawyer v. R. R.*, 37 Mo. 240. (2) It devolved upon plaintiffs to show that their agent was prevented from properly fastening the car by the fault of defendant's employes, and that he *did everything in his power* to have them properly fastened. *Clark v. R. R.*, 64 Mo. 440; *Atchison v. R. R.*, 80 Mo. 213.

II. The jury should have been instructed to find for the defendant. The evidence fails to show any breach of the contract declared upon. For the recklessness and carelessness of plaintiffs, the defendant is not liable. *Atchison v. R. R.*, 80 Mo. 213.

III. The instructions refused to defendant should have been given.

T. J. Porter and Roland & Hughes, for the respondents.

I. The contract only required plaintiff tos *load and unload* at their own risk. Defendant was bound to furnish cars in proper condition to receive stock, when they run them up to the chute to receive the stock. On principle, the *Atchison case* (80 Mo. 213), is an authority in our favor, being a strict construction of the contract according to its specific terms. There is no evidence that the car was in proper condition to receive the stock when the defendant ran it up to the chute for that purpose.

II. The evidence shows these openings in the end of the cars were made for ventilation, or to admit the person in charge of the stock in and out of the car. And, notwithstanding plaintiffs' agent might have seen this door was unfastened, there was no negligence imputable to plaintiffs' agent unless it was shown that he knew the opening was large enough to admit a steer to get through, and there was no evidence of such knowledge.

III. The case was fairly presented to the jury.

Ellison, J.—The instruction given for plaintiff was erroneous. The first part of it, in regard to the duty of

the defendant to furnish suitable cars, properly constructed, and in safe condition, was correct as a proposition, and is supported by the cases of *Potts v. Ry. Co.* (17 Mo. App. 394), and *Brown v. Ry. Co.* (18 Mo. App. 568), but there was no evidence to support that part of it in reference to the door being broken or in an unsafe condition. The statement contained such an allegation, in addition to its becoming unfastened, while the evidence only goes to show that the door was left open and unfastened, for the reason that the defendant's servants did not give the plaintiffs' servants time to shut and fasten it. Under the contract it was plaintiff's duty to load the car, and he did, in fact, do so. It would be his duty under this contract to close the car doors, and, of course, defendant must give him time to do so before starting the train, that is, must not prevent his doing so by starting the train. We think, too, that under the circumstances of this case plaintiff should have notified defendant's servants, when he saw they were about to start, in ignorance of the door not yet being fastened, that he had not yet secured it, so that he might have been given time. The evidence tended to show that he had opportunity to do so, for he says the conductor was on the opposite side of the car from him, and he heard him giving directions for the train to go ahead. Though defendant might be chargeable with notice that its car doors were broken and unsafe it could not be presumed to know, in the absence of proof, that the door had been left open or unfastened by plaintiffs.

As the contract fully shows it was plaintiffs' duty to load the cattle, there was no necessity of inserting anything in defendant's second instruction as to the custom. The latter part of it, in regard to demanding time to shut the door, should be qualified, also, by adding, if he had opportunity to do so. The same qualification should be added to the third and tenth. The sixth and seventh were correct under the evidence as it has been preserved. The case of *Atchison v. Ry. Co.* (80 Mo. 213), contained a contract with a promise identical with the one in this

case, and the principle announced in that case is ample authority for what is said in this.

The judgment is reversed and the cause remanded. All concur.