ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY
*v.* LAW.

Opinion delivered May 19, 1900.

1. CARRIER—LIVE STOCK—NEGLIGENCE OF SHIPPER.—A shipper of cattle cannot recover of the carrier for cattle which escaped from the carrier's stock pen, while waiting for shipment, and were lost, if their escape was due to his own carelessness in failing to fasten the gate of the pen. (Page 222.)

2. DAMAGE—EVIDENCE—OPINION.—In an action against a carrier to recover damages to stock caused by the carrier's delay in furnishing cars for shipment, plaintiff's opinion as to the amount of his injury, being based on elements of damage not stated, is inadmissible. (Page 223.)

3. BILL OF LADING—NOTICE OF DAMAGES.—Damages to cattle suffered by reason of the carrier's delay in furnishing cars for shipment are not covered by a stipulation in the bill of lading that, "as a condition precedent to any damages or any loss or injury to stock covered by this contract," the shipper will give notice to the company before the stock is removed. (Page 224.)

Appeal from Drew Circuit Court.

MARCUS L. HAWKINS, Judge.

*Dodge & Johnson,* for appellant.

A common carrier does not become responsible for the care and custody of property until it is delivered to it, and it has accepted it for shipment. 56 Ark. 288; Hutch. Carr. §§ 82, 94, 95. It was the appellee's duty to see to the safety of the cattle until they were delivered to appellant; and his failure to use proper precautions to that end, and not the failure of appellant to furnish cars, was the proximate cause of the loss. Hence he cannot recover. 56 Ark. 263, 271; 63 Tex. 322; 55 Ark. 521; 139 U. S. 237. Where delay is caused by an unusual and unexpected rush of freight, such as the carrier could not be expected to foresee, if goods be transported within a reasonable time, the carrier has done its duty. Hutch. Carr. § 292; 70 Mo. 296; 51 Mo. 311; 10 Biss. 170; 20 Wis. 594; 102 N. Y. 590; 22 Am. & Eng. R. Cas. 421. The court

erred in the admission of testimony in regard to the repairs upon the gate after the loss. 48 Ark. 473; Ell. Ry. §§ 1177, 1697; 150 Mass. 388; 45 Ia. 627; 123 Ind. 15; 77 Mo. 34; 31 Conn. 524; 144 U. S. 206; 30 Minn. 465; 108 N. Y. 151; 51 Conn. 524; 77 Mo. 34; 75 Tex.;155; 123 Ind. 15; 132 Ill. 53; 86 Mich. 14; 154 Mass. 168; 30 Minn. 465, 468; 21 L. J. (N. S.) 261, 263, The court erred in the admission of evidence on the question of value. 59 Ark. 110; 47 Ark. 497; 51 Ark. 328; 21 S. W. 81; *ib.* 607; 31 S. W. 412; 67 Tex. 241; 85 Tex. 593; 56 N. W. 200; 14 Neb. 463. Appellee's failure to give the notice required by the fifth clause of the bill of lading bars his recovery. 63 Ark. 355; 55 S. W. 215.

*R. E. Craig, W. S. & Farrar L. McCain,* aud *Wells & Williamson,* for appellee.

A railway cattle-pen is a depot of the company. 67 Ark. 498. The 25 head of cattle not being embraced in the special contract of the bill of lading, there was nothing to affect the common-law liability of appellants in respect thereto. 74 N. W. 301. Appellant was liable for loss occasioned by the insecure gate to the cattle-pen. 48 Ark. 491; 37 Ark. 519; 17 S. E. 344; 45 S. W. 41; 90 Tex. 223; 68 Tex. 314; 80 Tex. 270; 37 S. W. 255. Appellant was liable, as a common carrier, for the cattle lost, whether the gate was insecure or not. 52 Ark. 290; 60 Ark. 338; 55 N. E. 296; 139 U. S. 128; 22 S. E. 490. The doctrine of reasonable time has no application to contracts of a railway company where a time is fixed for furnishing cars. 62 Mo. App. 262; Hutch. Carr. § 317. In considering the duty which the law imposes, much depends upon the character of the freight. 58 Ark. 487; 24 S. W. 916; 21 S. W. 56. The clause in the bill of lading does not operate to release appellant. 57 Mo. App. 471; 72 Mo. App. 34; 17 Mich. 296. There was no error in the admission of the testimony as to damage. 44 Ark. 103; 49 Ark. 381; 39 Ark. 167; 51 Ark. 324; Greenleaf, Ev. § 440. As to appellee's right to recover damages to the cattle, see also 50 La. Ann. 619; 61 Ind. 583; 15 So. 807.

BATTLE, J.  John C. Law sued the St. Louis, Iron Mount-

ain & Southern Railway Company for damages which were caused by the escape of his cattle from the stock pens of the defendant, in which they had been placed for shipment, and by the failure to ship them within a reasonable time after. they were ready and waiting for transportation. He alleged in his complaint that he notified the defendant's agent that he would have 340 head of cattle at Portland, on the line of its railway, in this state, on the 23d of November, 1897, ready for shipment, and that he was informed that the cars would be ready to receive them on the 24th of the same month; that he arrived at Portland with his cattle on the 23d of November, and placed a part of them in the defendant's stock-pen; that on the night following the cattle in the pen broke through a defective gate, and made their escape; that 112 of them were recovered at an expense of $71.10 to him; and that 28 could not be found, and were lost. He further alleged that the cattle were detained at Portland needlessly and negligently from the 23d to the 25th of November, when they were shipped; that while the 112 were in the stock pens they were not fed or watered, but were "starved" by the defendant for a period of 60 hours; that they became emaciated, hungry, and restless, to the plaintiff's damage in the sum of $336; that the 28 which were lost were worth $700; that he was further damaged in the sum of $309 by reason of the defendant's failure to ship the remaining 206 head in a reasonable time, and to water and feed them while awaiting shipment. And he asked for judgment for $1,416.10, the total amount of his damage. The defendant answered, and denied each allegation in the complaint, and set up many defenses. The jury in the case, after hearing the evidence, returned a verdict in favor of the plaintiff for $600. The court rendered judgment accordingly, and the defendant appealed.

The evidence that was adduced in the trial tended to prove, substantially, the following facts: On the 15th or 16th of November, 1897, Law, the plaintiff, applied to the defendant's agent at Portland for ten cars for the purpose of shipping 340 or 350 head of cattle to St. Louis and Little Rock, and the agent promised that he would try to procure the cars for

him. Plaintiff then returned to his home at Hamburg, in this state, where his cattle were. While there he was informed by the agent, through a telegram, that the cars would not be ready until the 23d of November. He drove his cattle to Portland; reaching there on the 23d,—the day designated. On arrival there he placed four car loads of them, which he expected to ship to St. Louis, in Cammack's lot, which adjoined the defendant's stock-pens. The remainder of the cattle (six car loads) he herded in an old field about a mile and a half from town. The next day (the 24th of November) the agent informed him that he would get his cattle off about 3 o'clock in the afternoon. He then took the four car loads of cattle out of Cammack's lot, and put them in the defendant's stock-pens. The gate to the pens was an old one. It sagged down and dragged on the ground. It had settled so, as plaintiff testified, "that you could not fasten it good." It had a sliding latch, which fitted in a notch in a post; and it could be fastened by slipping the latch into the notch, or on the inside of the post. He pushed the gate to, and as it sagged he made no effort to raise it in order to shove the latch into the notch, but slid the latch on the inside of the post. On account of the crowded condition of the pens the latch was subject to be pushed back, and the gate opened, by the cattle rubbing and pressing against it. But he made no effort to prevent this, but slid the latch on the inside of the post, and left it in that condition. On the next succeeding night, about 8 o'clock, the cattle pushed open the gate and escaped. All of the cattle, except 25, were recovered, at a cost of $71.10. Twenty-eight were at first lost, but 3 of them were afterwards found. The 25 which were never recovered were worth $625.

One hundred and thirty-eight head of the cattle were shipped from Portland on the 25th of November, 1897, and 206 were shipped on the 28th of the same month. While they were at Portland, awaiting shipment, the weather was bad, and mud abounded everywhere. They were compelled to stand in the mud. It was difficult to obtain feed for them. A few cotton seed were obtained, but there were no troughs, and no place suitable for feeding; and the seed were thrown in piles

on the ground, and a good part of them were lost in the mud, and they did but little good. The consequence was, the cattle. suffered with hunger, and lost much in flesh, and it became necessary to feed them for some time before they were ready for market. The delay in the shipment was caused by the great demand for cars on the defendant's road, which exceeded reasonable anticipation. The defendant was unable to supply the demand of shippers.

,The plaintiff claims that he was damaged in the manner aforesaid as foliows:

First. He claims he was damaged by reason of loss of twenty-eight head of cattle, caused by their escaping from a defective and insecure pen, $700.

Second. To amount paid out for gathering up the escaped cattle, $71.10.

Third. To damages to 112 head of cattle by exposure and detention at Portland and Little Rock, caused by delay in furnishing cars, $3 per head, $336.

Fourth. To damages for detention of 206 head from Tuesday, November 23d, to November 28th, without food and water, at $1.50 per head, $309.

The jury, in a special verdict, found that he was entitled to damages as follows:

> To loss of 25 head.................$375.00
> To damage to stock and gathering same. 225.00
> Total .......................$600.00

Did the evidence sustain the verdict? The evidence shows that the cattle which made their escape from the pen passed through the gate, and that their escape was due entirely to the manner in which the gate was fastened. If there was any defect or insecurity in the manner in which it was fastened, it was the result of plaintiff's negligence. He relieved the defendant of every duty in this respect, and, unaided and alone, except by his own employees, undertook to fasten it. The defendant was not called upon, and did not undertake to assist in any way. The escape of the cattle was due entirely to the negligence of the plaintiff, and he is consequently entitled to recover nothing on that account.

Was the verdict of the jury sustained by the evidence in other respects? The plaintiff undertook to prove the damages that he sustained by the detention of the cattle at Portland by his own testimony, elicited by questions and answers, over the objection of the defendant, as follows:

"Q. You have charged here damage to 112 head of cattle by reason of neglect in furnishing cars, exposure and detention at Portland and Little Rock, $3 per head. Tell the jury what was the damage, and what was the cause?

"A. Why, the damage I considered was at least $3 a head, and I think more than that.

"Q. What was the damage resulting from delay in furnishing cars at Portland per head of cattle?

"A. Three dollars a head is what I said just then. I considered they were damaged that much.

"Q. Tell the jury how they were damaged.

"A. They were starved to death in the mud, and detained there, and then, after they got out of the pens, of course, they got nothing to eat there, you see, and they were detained there three or four days without anything to eat; and, of course, that fixed them so they were not fit to go on the market at all, and I had to put them in my feeding pens, and ship them out in the spring as fed cattle. I would have sold them off the range just as they were the first time.

"Q. The next item is the detention of 206 head of cattle from Tuesday, November 23d, until November 28th, at 3 o'clock. Where did the detention occur?

"A. At Portland.

"Q. What was that worth per head?

"A. One dollar and fifty cents per head."

This was all the evidence adduced to show the damage mentioned, and it was clearly incompetent; for it is not, as a general rule, permissible for a witness to estimate the damages a party has sustained by the doing or omitting to do a particular act. That is not a fact, but a matter of opinion, to be deduced from competent evidence by the court or jury trying the issues of fact. The damage in question was the pecuniary injury the plaintiff suffered on account of the unreasonable de-

tention of his cattle at Portland. We do not know what elements entered into his estimate of the same. He might have estimated it to be the depreciation in the market value of the cattle on account of an unreasonable delay in the shipment, or the cost of restoring the cattle to the condition they were before the delay. In the latter case his measure of damages would have been clearly wrong. This is not one of those cases in which there is no room to estimate damages, except in one way. Hence the greater was the reason for confining witness to a statement of facts, and allowing the jury to estimate the damages under instructions of the court. The jury should have been left to determine the damages according to the facts, uninfluenced by the opinions of interested witnesses.

In the bills of lading executed by the defendant to plaintiff, the following clause was incorporated:

Fifth. "That, as a condition precedent to any damages, or any loss or injury to live stock covered by this contract, the second party will give notice in writing of the claim thereof to some general officer, or to the nearest station agent of the first party, or to the agent at destination, or some general officer of the delivering line, before such stock is removed from the point of shipment, or from the place of destination, and before such stock is mingled with other stock; such written notification to be served within one day after the delivery of the stock at destination, to the end that such claim may be fully and fairly investigated, and that a failure to fully comply with the provisions of this clause shall be a bar to the recovery of any and all such claims." The notice mentioned in this clause was not given, and the defendant insists that it was thereby relieved from liability for the claim sued for. The notice to be given was confined to "any damages," or any loss or injury to live stock covered by the bills of lading. It does not appear to us that the damages sued for were covered by the bills of lading; and we think that the notice was not required by the contract of the parties to be given in this case.

Reversed and remanded for a new trial.