# FICKLIN & SON, Respondents, v. WABASH RAILROAD COMPANY, Appellant.

### Kansas City Court of Appeals, January 8, 1906.

1. **COMMON CARRIERS: Special Contract: Consideration: Reduced Rates.** Where the special stipulations of a contract of affreightment are based upon the express consideration of reduced rates and the rate in fact is not a reduced one, the special agreements fail for lack of consideration.

2. **———: Negligence: Overcrowding.** Where the approximate cause of the death of the sheep is the negligent overcrowding in the car, the shipper who knowingly and voluntarily took the risk of such overcrowding cannot recover.

3. **———: Pleading: Evidence: Variance: Special Charge.** Where the death of sheep is alleged to be caused by the carelessness of the carrier in violently handling its trains, and the evidence shows the sheep were lost from the pens, the variance is fatal and the fact that the sheep in the pens might be construed in course of shipment will not cure the defect, since the shipper chose to stand, not on the general averment but on the particular averment, thus inviting the defendant to meet him there.

4. **———: Damages: Overcrowding: Shipper's Negligence.** Where an experienced shipper understands that sheep kept in the pens will make a loss and fails to order sufficient cars to carry his whole flock, he cannot recover for the damage sustained by detention in the pens until additional cars can be had.

Appeal from Gentry Circuit Court.—*Hon. William C. Ellison*, Judge.

REVERSED AND REMANDED.

*Geo. S. Grover* for appellant.

(1)   Upon the undisputed facts the demurrer to the evidence should have been sustained.   Gurley v. Railway, 93 Mo. 450; Witting v. Railway, 101 Mo. 640; Gashweilers v. Railway, 83 Mo. 119; Helm v. Railway, 98 Mo. App. 419; Railroad v. Cleary, 77 Mo. 637; Kellerman v.

Railway, 136 Mo. 188-9; Farber v. Railway, 116 Mo. 94; Walker v. Railway, 121 Mo. 584; Raming v. Railway, 157 Mo. 509. (2) For the same reason the learned judge below should have directed a judgment in defendant's favor at the close of the case. See authorities supra. (3) The instructions given at the plaintiff's request, and by the court of its own motion, were erroneous. Galbreath v. Carnes, 91 Mo. App. 512; Haworth v. Railway, 94 Mo. App. 215. (4) The instructions asked by the defendant and refused, should have been given. (5) The instructions given for the plaintiff and those given for the defendant are in hopeless conflict. Who can tell which guide the jury followed?

*Peery, Lyons & Wood* for respondents.

(1) The contract of shipment offered in evidence, not being based upon a special or reduced rate, but the rate therein named being the only rate in force at the time, and being the highest legal rate, all of the clauses and stipulations contained therein attempting to exempt the defendant from its common-law liability are void. Bowring v. Railroad, 90 Mo. App. 324; Paddock v. Railroad, 60 Mo. App. 328; Rice v. Railroad, 106 Mo. App. 371; Keyes-Marshall Co. v. Railroad, 87 S. W. 553; Summers v. Railroad, 79 S. W. 481; Paddock v. Railroad, 155 Mo. 524. And this court will take judicial notice of the fact that the rate charged was the highest legal rate. Wynn v. Railroad, 86 S. W. 562; 5 Am. and Eng. Enc. Law (2 Ed.), 299; Railroad v. Reynolds, 17 Kan. 209; Paddock v. Railroad, 60 Mo. App. 328; Phoenix Powd Co. v. Railroad, 101 Mo. App. 442; Duvenick v. Railroad, 57 Mo. App. 550. (2) The seventy-five head of sheep involved in this appeal were delivered to the defendant and put into its stock pens, and accepted by it for shipment on February 29, 1904; the written contract of shipment entered into on March 2, the third day after this defendant's liability, as a carrier had attached did not

waive any claim which the plaintiff then had against the defendant for its flagrant violation of its duty to ship his fat sheep to market with diligence and dispatch and without unreasonable delay. McCullough v. Railroad, 34 Mo. App. 23; Harrison v. Railroad, 74 Mo. 373; Perkins v. Railroad, 17 Mich. 296; Gann v. Railroad, 72 Mo. App. 34; Miller v. Railroad, 62 Mo. App. 252. The case of Helm v. Railroad, 98 Mo. App. 419, relied upon by defendant has no application to the facts of the case at bar. (3) The reception by the defendant of the sheep in the pens of the company was equivalent to an agreement on its part to transport the same with diligence and without unreasonable delay. And if it failed to do so it is liable to plaintiff for the damages resulting from such failure. Gwinn v. Railroad, 20 Mo. App. 453; Pruitt v. Railroad, 62 Mo. 527; Mason v. Railroad, 25 Mo. App. 479; Lackland v. Railroad, 101 Mo. App. 420; Hutchinson on Carriers (2 Ed.), sec. 89. (4) The defendant's liability as a carrier attached as soon as the sheep were delivered to and accepted by it in its stock pens. This has been repeatedly decided in this court. Mason v. Railroad, 25 Mo. App. 478; McCullough v. Railroad, 34 Mo. App. 23; Paddock v. Railroad, 60 Mo. App. 339; Kincaid v. Railroad, 62 Mo. App. 365; Cook v. Railroad, 57 Mo. App. 471; Bradford v. Railroad, 64 Mo. App. 475; Tracy v. Railroad, 80 Mo. App. 389; Lackland v. Railroad, 101 Mo. App. 420; Hutchinson on Carriers (2 Ed.), sec. 89.

JOHNSON, J.—Action for damages against a common carrier alleged to have been sustained in consequence of negligence in providing cars for the shipment of live stock and in the transportation of the same to market. Plaintiffs recovered judgment in the sum of $25, and defendant appealed. Allegations in the petition pertinent to the questions submitted to us for determination are as follows:

"Plaintiffs further state that on the 20th day of Feb-

ruary, 1904, they were the owners of 488 head of sheep which they desired to ship from said station at Stanberry to the market at South St. Joseph, Missouri, on the 22nd day of February, 1904, 'and asked that cars be furnished for such shipment; that defendant failed and refused to furnish said cars on said last-named date, but notified plaintiffs on the 29th day of February, 1904, that sufficient cars for the shipment of said sheep were at Stanberry and that defendant was ready to receive said sheep for transportation. That plaintiffs immediately drove said sheep to Stanberry and delivered the same to defendant at its stock pens at its station at said city of Stanberry, and defendant received and accepted said sheep at said station and placed the same in its said stock pens and received and accepted said sheep for transportation from said city of Stanberry to the stock yards at the city of South St. Joseph, Missouri; but the defendant failed and refused to furnish cars as it was its duty to do, for the shipment of all of said sheep, but furnished cars only for 417 head thereof, leaving 71 head of said sheep in its pens at Stanberry; which said 71 head of sheep defendant negligently and carelessly refused to transport to said market at South St. Joseph, Missouri, until the 2nd day of March, 1904, and said defendant negligently and carelessly refused to furnish any cars for the transportation of the same until said last-named date; and said 71 head of sheep did not arrive on said market until the 3rd day of March, 1904, owing to the carelessness and neglect of duty of defendant as aforesaid; that 71 head of sheep if transported with reasonable diligence by defendant would have arrived on said market on the first day of March, 1904, and the 3rd day of March, 1904, the market price of said sheep was greatly reduced and said sheep were sold for a much less amount than if they had reached said market on March 1, 1904; that said sheep were greatly shrunken in weight more than they would have been if promptly transpor-

ted; that the appearance of said sheep was affected so as to greatly reduce their market value; that on account of the failure of defendant to ship all of said sheep together, on February 29, 1904, plaintiffs were compelled to pay extra commission charges for the sale of said sheep, and were compelled to pay extra railroad fare to look after said sheep; that on account of carlessness and negligence of defendant and unnecessary violence in handling its trains carrying said sheep, four of the same were lost and not delivered to plaintiffs nor their agents, and five of said sheep were killed in transportation by rough handling and lack of care as aforesaid."

In the answer, defendant pleaded the shipping contracts signed by plaintiffs, in which are found a number of stipulations that, if enforcible, limit the liability of defendant in various respects. These restrictive provisions are all based upon the consideration of a "reduced rate" and cannot be sustained for the reason that the evidence, including that offered by defendant, shows an entire failure of the consideration stated. It appears that defendant has but one rate for the carriage of sheep from Stanberry to St. Joseph, which is charged in all cases regardless of the value and number of the animals offered for shipment. It must be presumed that plaintiffs in giving their assent to the special agreements embodied in the contract were moved thereto by the representation and understanding that they were receiving a reduced rate for the rights they released and the duties they assumed. If, in fact, the so-called consideration was a fiction, the benefits and immunities to defendant founded upon it rest upon nothing and fall for lack of support. Fountain v. Railroad, 114 Mo. App. 676; Summers v. Railroad, 114 Mo. App. 452, 79 S. W. 481; Ward v. Railway, 158 Mo. 226. The shipping contracts will be treated as ordnary bills of lading and defendant held thereunder to the common-law duties and liabilities imposed upon common carriers.

Plaintiffs' evidence shows that four hundred and ninety-two head of sheep were brought from their farm to the station instead of four hundred and eight-eight head, as alleged in the petition. Before loading, plaintiffs discovered that, instead of providing the two double-decked cars thirty-six feet in length as ordered, defendant had for their use four single-decked cars, each thirty-four feet long. Plaintiffs protested to defendant's agent that the cars were insufficient for the transportation of the number of sheep they had, but finally concluded they could be made to answer the purpose and loaded all of the animals into them. Five of the sheep were killed in the process, presumably by suffocation, and plaintiffs removed seventy-five head from the cars and put them back in defendant's shipping pens and ordered another car for their transportation. The four hundred and seventeen head remaining in the cars were billed out and carried by defendant and its connecting lines to their destination. This number included the five dead. Of the seventy-five returned to the pens, four escaped therefrom and were lost. The remaining seventy-one were held two days waiting a car and were then shipped and carried to market where they were sold. Plaintiffs in the petition claimed damages for the killing of the five; the loss of the four; loss in weight; and value of the detained sheep and increased expense incurred from defendant's failure to furnish the two double-decked cars.

In the instructions given, plaintiffs were not permitted to recover for the dead sheep and, in the event of a retrial of the case, no recovery for them should be allowed in any state of the pleadings under the facts disclosed. Conceding the negligence of defendant in failing to furnish the kind of cars ordered, it was the negligence of plaintiffs in knowingly overloading the cars that was the proximate cause of the killing. Plaintiffs are experienced shippers and knew before they began loading that the cars were too small for the whole shipment. They knowingly and voluntarily took the risk of overcrowd-

ing and cannot complain if the result, reasonably to have been anticipated, followed their own want of due care.

The court did instruct the jury to find for plaintiffs for the four lost sheep if they "were lost in transportation by defendant and not delivered to the consignee." This was reversible error. The cause of action pleaded is founded in negligence and with respect to the lost sheep it is averred "that on account of the carelessness and negligence of defendant and unnecessary violence in handling its trains carrying said sheep, four of them were lost," etc. The specific act of negligence charged is "violence in the handling of its trains," from which but one inference is admissible, that the sheep were lost from the train while in transit as the result of careless operation. There is no evidence to sustain the charge. Plaintiffs admit the sheep were lost from the pens. The instruction submitted an issue totally at variance with the conceded facts. Plaintiffs argue that the variance is immaterial because the duty imposed by law upon the defendant while the sheep were in the shipping pens was that of a common carrier and not a custodian, and therefore the only facts constitutive of the cause of action were the reception of the sheep in the pens by defendant and its failure to deliver them at their destination. One weakness of this argument, and we need look to no other, is that it overlooks the fact that plaintiffs in their petition made a specific act of negligence elemental to their cause of action. They did not choose to stand upon a general averment, but selected a particular ground, notified defendant to meet them there, and they must recover upon that ground or not at all. The vice of the instruction lies as much in the absence of any proof to sustain the issue presented as in the failure to submit in its entire scope the cause of action pleaded.

Another error is properly before us under the demurrer to the evidence. Defendant contended throughout the trial that, had two double-decked cars of the dimensions ordered been provided, the number of sheep

brought in would have overloaded them and plaintiffs would have been compelled to make a second shipment, while plaintiffs insisted that all of the sheep could have been loaded safely into the two cars. One of the plaintiffs testified as a witness and, on cross-examination, was compelled to admit that the small excess of area in the two double-decked cars over that in the four single cars would not have accommodated more than twenty-five head of sheep, but he said that, when he found the cars would not hold all of the sheep, he took out fifty head more than was necessary to relieve the overcrowding under the idea that, as he had to make a separate shipment, it was of no consequence whether it contained twenty-five or seventy-five head. To make it clear that two large cars would have held the four hundred and ninety-two head, plaintiff was quite positive that fifty more could have been sent with the first lot without any danger of overcrowding, and now complains of the very damage he, as an experienced shipper, knew the fifty head would likely sustain in being held in the railroad pens for another car. He knew the animals would certainly lose in weight and appearance and become less marketable and that market values are constantly fluctuating and, yet, for no reason at all, unnecessarily subjected himself to this damage. There is no sound principle that warrants the recovery of any damages so incurred. Plaintiffs by their own act invited loss to the fifty head.

For the errors noted, the judgment is reversed and the cause remanded. All concur.