Booth, Judge,
delivered the opinion of the court.
The plaintiff company transported, on a Government bill of lading, for the defendants 17 mules from Davis, *477 Calif., to Douglas, Ariz. The transportation service, in so far as carriage of the mules is concerned, was completed without unusual incident. The issue arises upon a question of liability for the loss of 10 of the mules subsequent to their being inclosed in the stock pens of the plaintiff company at Douglas, Ariz.
The mules were placed on board the cars at Davis, Calif., and a caretaker, Harry Sweitzer, was placed by the defendants in charge of the same. Sweitzer accompanied the shipment during its entire course, and on the arrival of the car at Douglas unloaded the mules, placed them in a pen in the plaintiff’s stockyards, fastened the gates with wire, and then retired for the night. The train did not arrive in Douglas until some time near midnight July 16, 1915. and it was at least an hour and fifteen minutes later before the mules were unloaded. The night was dark and rainy. In the early hours of the morning of July 17 Sweitzer, on going down to the yards to water and feed the mules, discovered that they were all gone. The visible evidence indicated horse thieves, and the stealing of the mules was subsequently confirmed by retaking 7 of them, leaving a total loss of 10. Sweitzer made no complaint of any of the surroundings at the time the mules were unloaded, except as to an absence of a light or lights. At any rate, he admits that he finally overcame this difficulty and penned up the mules so that in his judgment they could not have escaped without outside interference. The record sustains beyond contradiction the fact that the stockyards of the company were in good condition, and unless the absence of lights and locks for the outside gates is to be held sufficient to condemn them, it is not claimed by the defendants that any other circumstances will inure to their benefit. The defendants paid the freight charges on the shipment, and subsequently, out of other sums due the plaintiff company for other and distinct transportation service, deducted the sum of $1,021.20 for the loss of said 10 mules. This suit is to recover the full amount so deducted.
The clause in the bill of lading upon which the transportation was furnished is set forth in Finding II. Without repeating it in full, it will suffice to observe that the re *478 sponsibility for the stock was expressly put upon the defendants “ while the same may be in the stockyards of the first party.” A railroad company may provide in the bill of lading that the shipper assumes liability for loading and unloading live stock and thus relieve itself from liability for such service. The defendants concede this to be the law, and the authorities cited in plaintiff’s brief sustain it. East Tennessee, etc., R. R. Co. v. Johnson, 75 Ala., 596; Fordyce v. McFlynn, 56 Ark., 424; Bowie v. Baltimore, etc., R. R. Co., 1 MacArthur (D. C.), 94; Newby v. Chicago, etc., R. R. Co., 19 Mo. App., 391; Missouri, etc., R. R. Co. v. Chittim, 60 S. W., 284.
The carrier, however, is legally obligated to provide suitable stock pens, in good condition, or, as the court puts it in Chicago, R. I. & G. Ry. Co. v. Crenshaw, 126 S. W., 602, “the true test seems to be whether the pens under all the circumstances were such as a person of ordinary prudence would have provided.” Thus we assume from the authorities cited that if the railroad company provides pens suitable and in good condition for the restraining and care of live stock, it may relieve itself by express stipulations in the bill of lading for responsibility for the same while in the pens of the company in charge of an agent of the shipper.
It is obviously the fact that at the time of this loss there was serious domestic disturbances in Mexico, and it can not be gainsaid that horse stealing was more or less prevalent, but these local conditions are not such as to impose upon the plaintiff company the necessity of providing facilities for the shipment of live stock that would render theft of the same impossible. It can not be done. If the company adopts the means usually employed in transportation service of this character, and such as suggests itself to prudence and caution, it can not be held to a stricter responsibility. The defendants insist that chains and locks upon the gates might have forestalled the loss. The insistence is purely hypothetical. One desperate enough to execute the crime would probably not have been deterred by chains and locks attached to wooden posts and gates. A single light would not have availed against the invasion, and it is hardly possible that under all the circumstances it can be said that a *479 station, the size and importance of Douglas, would entail upon the company the maintenance of a series of electric lights throughout the night to prevent thefts. There is no evidence in the record warranting such an assumption. The company under the circumstances discharged its obligations when it furnished suitable stockyards in good condition for the reception of the stock in question.
We do not assert that there is not warrant in law for the deduction made by the defendants, as it was made in this case, but we have no hesitancy in announcing that no authority has been produced upon which such a course is predicated. The controversy here involves the exercise of a judicial function, the determination of liability under the law. It is not the usual differences which arise from the presentation of accounts to the accounting officers by the railway companies in which how much or how little may be due under the respective bills of lading. There is no dispute in the instant case as to liability for freight charges; no issue arises as to the amount due for the same. The company presented its freight bill and it was paid. Subsequently the accounting officers of the defendants reviewed the case as found in the written reports of the transaction, and without notice or opportunity to cross-examine witnesses, held the plaintiff company legally responsible for the loss of the mules, and deducted the amount from other funds due the company, but not then paid, for other transportation services in nowise here involved. Without further comment, it would seem from the face of the record that some positive authority for such a course would at least be cited to sustain the same.
Judgment is awarded the plaintiff company for $1,021.20. It is so ordered.
Gkaham, Judge; Hat, Judge, Downet, Judge; and Campbell, Chief Justice, concur.