[No. 2590.   May 10, 1922]

## SPENCE v. EL PASO & S. W. CO.

### SYLLABUS BY THE COURT

A shipper who agrees to load live stock at his own risk, and who overloads the cars, cannot recover against the carrier for losses which would not have occurred but for the overloading.

Appeal from District Court, Lincoln County; Hewitt, Judge pro tem.

Action by Clarence Spence against the El Paso & Southwestern Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded with instructions to enter judgment for defendant.

W. A. Hawkins and H. H. McElroy, both of El Paso, Texas, for appellant.

G. W. Prichard, of Santa Fe, for appellee.

### OPINION OF THE COURT

DAVIS, J.  This is an action to recover damages for injuries to a shipment of cattle made by appellee from El Paso, Texas, to Ancho, in this state.  The material allegations of the complaint as to negligence are as follows:

"The defendant agreed to furnish plaintiff five certain cars, the character of which was agreed on by said parties, and to safely carry over its lines of railroad from said city of El Paso to Ancho, and to safely deliver to plaintiff at said Ancho Station 260 head of mixed cattle.  * * * That while the defendant furnished certain cars for the use of the plaintiff, * * * it did not furnish the plaintiff the character of cars agreed on in said agreement, and did not safely carry and deliver said cattle to the plaintiff at said Ancho Station, pursuant to and in accordance with said agreement, but, on the contrary, neglected and failed to furnish cars with the capacity it had agreed on with plaintiff, and so negligently crowded said cattle in the cars furnished by it, and so negligently handled and cared for the said cattle as a common carrier over its line of railroad between the points named, that 10 head of said cattle were killed and died in said cars before they were removed therefrom at said Ancho Station, on or about the 2nd day of January, 1916; and that on the account of the bruises and injuries received due to the careless and negligent manner in which the defendant handled and hauled said cattle in said cars between the points aforesaid, 35 of said cattle died after being removed from said cars."

While there is a controversy as to the effect of these allegations, we will construe them according to the theory of appellee, as charging three breaches of duty against the railroad company, namely, that it did not furnish the character of cars agreed upon, that it negligently crowded the cattle into the cars, and that it was negligent in hauling and handling the cattle during transportation.  All of these charges were denied by the answer.

The evidence showed that appellee had 261 cattle in the stockyards at El Paso for shipment to Ancho, and

that he ordered two 40-foot and three 36-foot cars. Five were furnished, but all were 36-foot cars, containing therefore a total space less than that contracted for.

For the purposes of this case we shall assume the truth of the special finding of the jury, that the order for the cars was given to the agent of appellant, and that the duty to furnish them rested upon appellant.

There is no dispute as to the overloading of the cars. Two hundred sixty head were put into five cars, an average of 52 to the car, which, according to all the testimony, was considerably in excess of the number that could properly be loaded. They were so crowded that it was necessary to leave one head at the yards. But while agreeing as to the fact of overloading, the parties are in wide disagreement as to the responsibility for it, each asserting that the loading was done by the other. A special interrogatory was directed to the jury upon this question, and answered to the effect that the cars were overloaded by appellee. There was evidence to support this finding.

The contract under which the cattle were shipped contained the following provision:

"That said second party, at his own risk and expense is to take care of, feed, water, and attend to said stock while the same may be in the stockyards of the first party, or elsewhere, awaiting shipment, and while the same is being loaded, transported, unloaded and reloaded, and to load, unload, and reload the same at feeding and transfer points, and wherever the same may be unloaded and reloaded for any purpose whatever."

By the terms of this contract the duty to load and unload rested upon appellee alone. Under the special finding of the jury he actually loaded the cattle. We must therefore consider it as established that he alone is responsible for the overloading.

Appellee attempts to attribute the overloading to the failure of appellant to furnish cars of the capacity ordered. The argument is not sound. Appellant breached its contract in this regard, and thus became

liable for resulting damages. But that cannot include losses to cattle improperly crowded into the cars by appellee himself. As between these two acts, the overloading, not the failure to furnish the space ordered, caused the injuries. This is not a case of failure to furnish cars suitable for a particular purpose. The cars were fit for shipping cattle. The trouble arose, not from the character of the cars, but from loading them to more than their capacity.

The allegation of carelessness or negligence in the hauling of the train containing these cattle is based upon the testimony of a caretaker who traveled with them. He stated, in substance, as set out in appellee's brief, that several times the train was severely jerked so that many of the cattle fell down, and that the crowded condition of the cars made it impossible to get them up. The injuries to the cattle were not primarily caused by their falling. The fair inference from the testimony is that they were bruised, and in some instances killed, by being trampled while down by the other cattle. If the cars had been properly loaded, the men in charge could have gotten the down cattle onto their feet and prevented the injuries.

It was the duty of appellee to render such aid and assistance through the caretakers from time to time en route as would be helpful in protecting the cattle against injury, and this included the duty of getting up such cattle as were down in the cars. A., T. & S. F. R. Co. v. Merchants' Live Stock Co. (C. C. A.) 273 Fed. 130. Appellee by overloading the cars made impossible the performance of his duty in this respect.

It must therefore be taken as a fact that but for the negligence of appellee himself the injuries of which he complains would not have occurred. His own acts were the partial and contributing cause, if not, indeed, the principal cause, of the losses. May he recover under such circumstances damages for which he is at least in a large measure to blame, and thus shift to another's shoulders the loss which his own act caused? Legal

reasoning clearly says he may not do so, and authorities so hold.

In Illinois Central R. R. Co. v. Rogers, 162 Ky. 535 172 S. W. 948, L. R. A. 1915C, 1220, Ann. Cas. 1916E, 1201, the rule is stated as follows:

"It is well settled by the almost unanimous authorities that where the carrier furnishes a car to shipper for the purpose of shipping live stock therein, and the latter loads the live stock himself, and in doing so he overcrowds the animals or places in one compartment animals of different kinds, the risk of loss or injury is upon the shipper, being caused by his own act;  * * *  the carrier not being liable for loss or injury due to  * * *  such causes."

In Ficklin v. Wabash R. Co., 115 Mo. App. 633, 92 S. W. 347, the court said:

"Conceding the negligence of defendant in failing to furnish the kind of cars ordered, it was the negligence of plaintiffs in knowingly overloading the cars that was the proximate cause of the killing.  Plaintiffs were experienced shippers, and knew before they began the loading that the cars were too small for the whole shipment.  They knowingly and voluntarily took the risk of overcrowding, and cannot complain of the result, reasonably to have been anticipated, following their own want of due care."

In T. & P. R. Co. v. Klepper (Tex. Civ. App.) 24 S. W. 567, the court, in holding that evidence of overcrowding by plaintiff should have been admitted in an action based on defendant's negligence, said:

"It is no answer to say that appellee called for a 34-foot car, and was told he could only be furnished with one 33 feet long.  He knew the size of the car before he undertook to load it, and if he knew he required the longer car to contain his horses, his negligence was the greater for crowding them in the shorter."

In Hunt v. Chicago, B. & Q. R. Co., 95 Neb. 746, 146 N. W. 986, the court said:

"The court, instead of telling the jury that plaintiffs would be guilty of contributory negligence if their overloading and crowding the horses into the car contributed in causing the injury, by substituting the word 'caused' told the jury, in effect, that the plaintiffs would not be guilty of contributory negligence, unless the overloading and crowding of

the horses into the car caused the injury; in other words, that it was the sole cause of the injury. We think the instruction as modified was clearly prejudicial, and, being upon an important issue in the case, constituted reversible error. The most that the court should have done, if it decided to modify the instruction, would have been to have told the jury that, if 'such overloading and crowding of the horses into the car was the proximate cause of the injury,' plaintiff would be guilty of contributory negligence."

Other cases stating generally the principles on which this opinion is based, are: Diamond X Land & Cattle Co. v. Director General, 27 N. M. 675, 205 Pac. 267; L. & N. R. Co. v. Woodford, 152 Ky. 398, 153 S. W. 722; Western R. Co. v. Harwell, 91 Ala. 340, 8 South, 649; Hutchinson v. Chicago, etc., Co., 37 Minn. 524, 35 N. W. 433; St. Louis, etc., Co. v. Law, 68 Ark. 218, 57 S. W. 258; Short v. Oregon, etc., Co., 190 Ill. App. 25; Newby v. C., R. I. & P. R. Co., 19 Mo. App. 391, and cases cited in note to Illinois Central R. Co. v. Rogers, Ann. Cas. 1916E, 1203.

This is not a case in which a carrier has attempted by contract to absolve itself from the consequences of its own negligence, and cases denying its right to do so are not applicable here. In our opinion it turns entirely upon the general legal principle that a plaintiff may not recover damages for an injury which results from his own negligent acts.

The case is reversed and remanded, with instructions to enter judgment for appellant; and it is so ordered.

RAYNOLDS, C. J., and PARKER, J., concur.