FRED W. SHEFFIELD, Respondent, v. STONE, ORDEAN, WELLS COMPANY, a Corporation, Appellant.

(190 N. W. 315.)

**Municipal corporations — negligence of truck driver held for jury; whether automobile driver, who collided with truck coming from alley, was contributorily negligent, held for jury; whether contributory negligence of automobile driver proximately caused collision with truck held for jury.**

In an action for personal injuries resulting from the collision of a truck of the defendant with a Ford sedan operated by the plaintiff at the intersection of a street and an alley, it is *held* that the questions of negligence, contributory negligence, and proximate cause were for the jury; and hence, that the trial court did not err in denying motions for a directed verdict and for judgment notwithstanding the verdict.

Opinion filed October 26, 1922.

Motor Vehicles, 28 Cyc. p. 49 n. 46, 47, 48 New.

From a judgment of the District Court of Cass County, *Englert, J.*, defendant appeals.

Affirmed.

*Divet, Holt, Frame* N *Thorp,* for appellant.

"When a motorist is approaching a known dangerous situation, he is required to have his machine sufficiently under control to enable him to avoid a collision, and failing in this, he is guilty of negligence as a

matter of law." Berry, Automobiles, §§ 127–139, p. 417; Dempke
v. Guinig (Wash.) 114 Pac. 436.

"The plaintiff was denied recovery where the evidence showed that
in approaching the crossing in question, he did not have his car under
control, and was not prepared to stop immediately if danger threatened;
and this was held to be the case even if it appeared that the defendant
was negligent in not having his car under control, in not sounding the
horn, and in not making proper observations ahead." Berry, Automo-
biles, 3d ed. § 813; Gray v. Fox, 69 Pa. Super. Ct. 218.

"At street intersections motorists must exercise reasonable care to
avoid collisions." Berry, Automobiles, 3d ed. § 812; MaChing v. Co.
(Pa.) 97 Atl. 694.

The respondent, having entered the intersection of these streets first,
was clearly entitled to the right of way. It was the duty, therefore, of
the appellant, to have stopped his car, or so slackened his speed that
there would have been no collision. Hill v. Co. (Wash.) 186 Pac. 322
and citations.

If plaintiff was going so fast when fifteen feet from the truck enter-
ing the street, that he could not comply with this rule, he was legally
in the wrong and guilty of negligence as a matter of law. John v.
Payntor (Wash.) 170 Pac. 132; Simon v. Lit Bros. (Penn.) 107 Atl.
635; Mayer v. Melletee (Ind.) 114 N. E. 241; Taylor & Co. v. Hard-
ing (Ky.) 206 S. W. 284.

"It is the duty of the driver of an automobile, when approaching a
street crossing, to have his car under such control that he may stop it
so as to avoid an accident." Healy v. Shedaker (Penn.) 107 Atl. 842.

"It is clearly the duty of the driver of a motor vehicle upon the
public highways to at all times have the same under control, and to
use reasonable care to observe defects or obstructions in the public high-
way. Owens v. County (Iowa) 169 N. W. 390; Russell v. Walkins
(Utah) 164 Pac. 867."

"It is the duty of an automobile driver, traveling on a busy street of
a large city, and especially when about to cross another much used
street, to slow down his car to such an extent as to have control of same
and to stop it if made necessary in meeting another car at such cross-
ing." Mitchell v. Brown (Mo.) 190 S. W. 354; Huddy, § 127.

*Lawrence, Murphy & Nilles,* for respondent.

If by any reasonable theory deducible from the facts, the jury could have found that the truck driver had the last clear chance to avoid the injury, the mere fact that the plaintiff may have been guilty of contributory negligence as a matter of law would not bar a recovery. Actum v. Street R. Co. 20 N. D. 434, 129 N. W. 225; Welch v. Street R. Co. 24 N. D. 463, 140 N. W. 680.

CHRISTIANSON, J.   Plaintiff recovered judgment against defendant for damages to his person and property.   Defendant moved for judgment notwithstanding the verdict.   The motion was denied and defendant has appealed.

The only error assigned is the ruling on the motion for judgment notwithstanding the verdict.   Defendant specifically states that a new trial is not desired and that he waives all right thereto.

The question so presented, namely, under what circumstances judgment notwithstanding the verdict may be ordered, has been considered by this court in many cases.   See, Meehan v. Great Northern R. Co. 13 N. D. 432, 442, 101 N. W. 183; Kerr v. Anderson, 16 N. D. 36, 111 N. W. 614; Aetna Indemnity Co. v. Schroeder, 12 N. D. 110, 95 N. W. 436; Rieck v. Daigle, 17 N. D. 365, 117 N. W. 346; First State Bank v. Kelley, 30 N. D. 84, 152 N. W. 125, Ann. Cas. 1917D, 1044; Dubs v. Northern P. R. Co. 42 N. D. 124, 171 N. W. 888.   The rule established by these authorities is that judgment notwithstanding the verdict may be ordered only in a case where it clearly appears from the whole record that the party who moves for such judgment is entitled to a judgment on the merits as a matter of law.

The damages sought to be recovered in this action were caused by a collision between a truck operated by an employee of the defendant and a Ford sedan driven by the plaintiff.   The collision occurred about noon, Nov. 8, 1921, directly in front of a blind alley leading into Sixth street south in the city of Fargo.   Sixth street south is an extension of Broadway and is one of the main thoroughfares of the city.   The street runs north and south and is bisected by Front street, that part of the street lying north of Front street being called Broadway and that part of the street lying south of Front street being called Sixth street south.

The blind alley in question intersects the west side of Sixth street immediately north of the Fargo Auditorium. The alley is 20 feet in width and at the point where it enters the west side of Sixth street it is covered by a sidewalk with a heavy brick and concrete wall on the north side, heavy concrete pillars on the south and other concrete posts at or near the entrance.

About 8 o'clock in the morning of Nov. 8, 1921, the plaintiff parked his car in the parking zone in the middle of Broadway in the block lying immediately south of Front street. The car remained where it was so parked until noon when the plaintiff entered it for the purpose of driving to his home. The plaintiff was accompanied by one Miss Harrington. The natural, usual, and shortest route for the plaintiff to travel to his home would be to go down Broadway in a southerly direction, across Front street and continue down Sixth street south in a southerly direction, and this is the route which he followed. It was a cold day and there was no snow on the pavement. The motor was cold and when the plaintiff started to drive some of the cylinders were missing. When the plaintiff reached Front street, that is after he had traveled a distance of about one-half block, he was interrupted by the eastbound traffic so that he was compelled to stop his car completely, although the motor kept running. Immediately south of Front street, Sixth street south runs down an incline (the evidence, however, does not disclose the percentage of the grade). The accident occurred at a point about 140 and not to exceed 160 feet from the point where plaintiff had stopped his car on the north side of Front street.

The evidence shows that after the traffic had passed so as to enable plaintiff to proceed, he crossed Front street and traveled in a southerly direction down Sixth street south,—on the west side of said street. The car was in low gear for the first 70 feet and in high gear the last 70 feet. According to the testimony of the plaintiff, however, the speed of the car was not greatly increased interim the shifting into high gear and the collision. When the plaintiff reached a point about 15 or 20 feet from the mouth of the alley, he noticed the truck coming out. Sixth street at this point is 45 feet in width with a parking zone 20 feet in width running down the center of the street, leaving a space of 12 feet 6 inches on each side of the parking zone for driving purposes. The

**49 N. D.—10.**

undisputed evidence is to the effect that the truck driver did not blow a horn or give any other signal. That is also true as regards the plaintiff. On seeing the truck coming out of the alley the plaintiff decided that the best way to avoid a collision was to turn the car to the left or cast away from the approaching truck and in this way attempt to pass in front of it. The plaintiff gives the following version of what subsequently occurred: "There was a car in the parking zone at about that point, and as soon as I cleared the car there in the parking zone I swung my car to the left, realizing that there would probably be a collision if I could not clear the truck coming out of the alley, and I swung to the left towards the center of the street, trying to avoid getting mixed up with this truck, but as I got nearly by, the right front of the truck caught the right rear fender of the Ford just back of the brace there that holds it on to the car, and, as a result, it anchored that corner of the Ford so the car front kept on its direction, but in front of the truck; as a result of the anchoring the front, with the concussion that the truck itself gave the Ford, it held so that the momentum of it inclined to swing the front end of the Ford, and it held it on me, and I could not swing it back again, just like taking an article and holding it on one corner, so the effect that the concussion that the truck gave the Ford caused it to swing sideways and topple over on its side and skid down the hill. . . . One of the front springs of the truck hung on the rear of my car. The rear of my car was practically at the center line of the street. I turned that far towards the left to clear him when he came out of the alley."

The plaintiff's testimony is corroborated by that of Miss Harrington. There is a square conflict in the evidence as regards the speed of the truck and the automobile. According to the testimony of the truck driver, plaintiff was traveling at a speed of from 25 to 30 miles an hour, while the truck was not exceeding 3 or 4 miles per hour, and was stopped by the driver in a distance of 2 feet after he saw the approaching car. The evidence adduced by the plaintiff tends to show that immediately preceding the collision the truck traveled a distance of to exceed 22 feet while the car driven by the plaintiff covered a distance of some 15 or 20 feet. At the time of the accident the truck had been traveling down grade for a distance of approximately 147½ feet from where it was started. Defendant offered some evidence relating to cer-

tain marks on the street, observed by some of the witnesses an hour or two after the collision, which it is contended tends to show that the Ford sedan had skidded, also that the truck in question was stopped by the driver as testified to by him. And it is asserted that this evidence establishes "physical facts" of such a controlling effect as to outweigh any testimony advanced on the part of the plaintiff to the contrary. In our opinion this contention is not well founded. The "physical facts" referred to rested upon the testimony of witnesses. The credibility of such witnesses and the weight to be given to their testimony was for the jury. Rotter v. Detroit United R. Co. 205 Mich. 217, 171 N. W. 514.

Defendant also contends that the plaintiff violated certain traffic ordinances of the city of Fargo and § 2976L, Comp. Laws, 1913, and, hence, was guilty of contributory negligence as a matter of law.

The ordinances in question provided: That a vehicle turning into another street to the right shall turn the corner as near to the right as possible.

No person or operator in charge of any automobile, motor vehicle, or motorcycle on any of the public streets or avenues of the city of Fargo, shall drive or operate or permit the same to be driven or operated at a rate of speed faster than is reasonable and proper, having regard to the width, condition, and use of the road or so as to injure property or the life or limb of any person, and shall have such vehicle under perfect control.

No person shall drive a motor vehicle without a brake or brakes sufficient to bring and capable of bringing such vehicle, together with any trailer that may be attached thereto, to a complete stop within 50 feet, when the same is traveling at a rate of 20 miles per hour.

The driver or person in charge of a vehicle on approaching a street intersection shall have his car under perfect control; and the vehicle on the right, under ordinary conditions, shall have the right of way.

Section 2976L, supra, provided that " . . . upon approaching a descent, and also in traversing such . . . descent, and upon approaching a crossing or intersecting highway, . . . a person operating a motor vehicle shall have such vehicle under perfect control, and the rate of speed shall not exceed 1 mile in eight minutes."

In our opinion the evidence in this case is not such that it can be said as a matter of law that the plaintiff violated any of the provisions of the ordinance or of the statute cited. But even if the evidence indisputably established such violation it would not follow, as a matter of law, that plaintiff had no right to recover. Before the violation of the ordinances or statute cited would preclude a recovery, there must be a causal connection between such violation and the injuries for which recovery is sought. In other words, it must appear clearly that the violation of the statute or ordinances was the proximate cause of, or contributed directly to, such injuries. Rotter v. Detroit United R. Co. 205 Mich. 212, 171 N. W. 514; Harris v. Bernstein, 204 Mich. 685, 171 N. W. 521; Gates v. Landon, 216 Mich. 417, 185 N. W. 723; Chambers v. Minneapolis, St. P. & S. Ste. M. R. Co. 37 N. D. 377, 395, 163 N. W. 827, Ann. Cas. 1918C, 954.

It follows from what has been said that the trial court did not err in denying defendant's motion for a directed verdict. This being so it necessarily follows that the trial court did not err in refusing to order judgment notwithstanding the verdict. Judgment affirmed.

BIRDZELL, Ch. J., and BRONSON, ROBINSON, and GRACE, JJ., concur.