ELVIN AXELSON, Respondent, v. ALEX JARDINE and C. T. Yircott, Copartners Doing Business under the Firm Name and Style of Jardine Bridge Company, Appellant.

MARIUS MADSEN, Respondent, v. ALEX JARDINE and C. T. Yircott, Copartners Doing Business under the Firm Name and Style of Jardine Bridge Company, Appellant.

(223 N. W. 32.)

· Opinion filed August 10, 1928.  Rehearing denied January 7, 1929.

*Conmy, Young, & Burnett,* for appellants.

*Lovell & Horner* and *I. A. Acker,* for respondent.

BURKE, J.   The case of Elvin Axelson v. Alex Jardine and C. T. Yircott, copartners doing business under the firm name of Jardine Bridge Company, and the case of Marius Madsen against the same defendants, were consolidated and tried as one case in the district court, the facts being the same in each case, and they were argued in this court and submitted on the same briefs.   They are actions for personal injury, and for property damaged, when the plaintiff Axelson's car driven by the plaintiff Madsen, passed into an excavation dug across the highway by the defendants.   The plaintiff claims, that the defendants were negligent in the manner in which they protected the public, or failed to protect the public, from the danger on account of the said excavation.   There were verdicts for the plaintiffs in each case, upon which judgments were entered and the defendants appeal.

The plaintiff, Madsen, was in the employ of the plaintiff, Axelson, as a separator man during the threshing season, and on the day of the accident they drove in Axelson's car from Larimore to the city of Fargo, a distance of about 125 miles, to get some concaves for the separator.   They arrived in Fargo a little after six o'clock in the evening, got the concaves and started back to Larimore about 10 o'clock in the evening, going back a different route, and intending to travel on the regular state highway from Fargo north.   They got off the main highway on a detour marked "Detour No. 1" with the regular Indian Head marker, and about 10:30 at night, while traveling west on "De-

tour No. 1" a road in general use, on a section line, as they approached highway "No. 1" they drove into an excavation which had been made for a culvert, 50 feet long, 4 feet deep, and 4 feet wide, extending clear across the road.

This excavation was made with scrapers, and the dirt was piled on either side of the ditch by the dumping of the scrapers, and it is the claim of the defendants, that it was so placed for the protection of the public. As a further protection the plaintiff placed a lighted lantern on the dirt on the west side of the ditch. A number of witnesses saw the light of the lantern during the evening, and the plaintiffs found the lantern after the accident lying by the side of the pile of dirt on the west side of the ditch. The plaintiff testified that they were driving about 20 to 25 miles per hour, that when they were about a quarter of a mile from the ditch they were traveling 23 miles an hour. It was a dark misty night, but there was an electric wiper on the windshield which they used at times, and the driver could see from 50 to 75 feet ahead of him. He saw the dirt in the road and thought that it was a raise in the road, as though the road was being newly surfaced. There were no lights at that time; the raise appeared to be a foot or a foot and a half high. When the car ran against the loose dirt the driver applied the brakes and the car seemed to balance, and was almost at a standstill when it dropped into the excavation and the plaintiffs were injured and the car damaged. Madsen's testimony is corroborated by the testimony of Axelson.

Witness Anderson testifying for the defendants states, that the piles of dirt on either side were about 4 feet high; that the dirt was about 9 or 10 feet from the ditch on each side, and he is corroborated by his son Carl Anderson. Alex Jardine testified that he went out there the next day and measured the piles of dirt. The one on the east side was slightly over 4 feet, and the one on the west side was slightly over 5 feet. The center of the pile on the east side was about 15 feet from the east edge of the ditch, and the center of the pile of dirt on the west side was about 10 feet from the west side of the ditch. The pile on the east side was about 12 or 14 feet from the edge of the pile on one side to the edge on the other, that is, this pile of dirt was about 12 or 14 feet wide from the east to the west, the direction in which the plaintiffs were traveling. The center of the pile of dirt on the

east side being 15 feet from the east edge of the ditch, the dirt extended at least 6 feet farther east from the center of the pile making the east side of the pile of dirt 21 feet from the east edge of the ditch. The ditch was 4 feet wide, and according to Jardine's testimony the center of the pile of dirt on the west side where they placed the lantern was 10 feet from the ditch. The lantern was then 35 feet from the east end of the dirt on the east side.

The trial judge permitted Mr. Jardine to testify to his long years of experience in making excavations and in putting up barricades for the protection of the public, and that he always used the dirt obstruction when possible, that being in his judgment the best and safest, and that he always used a lantern as in this case.

It is the contention of the defendants, that the plaintiffs were guilty of negligence under § 2976–L, Comp. Laws 1913, which prohibits a higher rate of speed than one mile in eight minutes in approaching an intersecting highway and that the evidence shows, that the plaintiffs were approaching an intersecting highway at a higher rate of speed than one mile in eight minutes.

Huddy on Automobiles, § 362, states the rule as follows:

"In case of the violation of a statute or municipal ordinance by an automobilist, only those classes of persons for whose benefit the regulation was enacted can plead the violation and secure the advantage afforded by the general rule. California—King v. San Diego Electric R. Co. 176 Cal. 266, 168 Pac. 131, 18 N. C. C. A. 112; Iowa—Hansen v. Kemmish, 201 Iowa, 1008, 45 A.L.R. 498, 208 N. W. 277; Michigan—Johnston v. Cornelius, 200 Mich. 209, L.R.A.1918D, 880, 166 N. W. 983; Minnesota—Westlund v. Iverson, 154 Minn. 52, 191 N. W. 253; Missouri—Anderson v. Wells, 220 Mo. App. 19, 273 S. W. 233; Ohio—Schell v. DuBois, 94 Ohio St. 93, L.R.A.1917A, 710, 13 N. C. C. A. 982, 113 N. E. 664; Marquard v. Moore, 1 Ohio L. Abs. 202; Tennessee—Carter v. Redmond, 142 Tenn. 258, 218 S. W. 217."

In the case of Owens v. Iowa County, 186 Iowa, 408, 169 N. W. 388, the court said:

"It is quite apparent that the provisions of this statute were designed, primarily at least, to prescribe the duty of the driver of a motor vehicle with reference to the person or property of another, and to provide safety therefor upon the public highway."

In the case of Walters v. Seattle, 97 Wash. 657, 167 Pac. 124, the court held:

"The object of a traffic ordinance or statute regulating speed of vehicles at crossings is to protect pedestrians and other users of the street and to avoid collisions."

And hence, in an action against the city for injuries resulting from the overturning of an automobile due to defective condition of the street, violation by plaintiff of a city ordinance cannot be relied on by the city as constituting negligence per se. See also the cases of Weart v. Stauffer, 19 Alberta L. R. 471 (1923) 2 West. Week. Rep. 51; Carlson v. Meusberger, 200 Iowa, 65, 204 N. W. 438.

In Rampon v. Washington Water Power Co. 94 Wash. 438, L.R.A. 1917C, 998, 162 Pac. 514, the court said:

"The object of the traffic ordinance is to protect pedestrians and vehicles, and to avoid collisions. . . . We have held that similar ordinances had no application unless the one invoking the ordinance can say that the ordinance was enacted for his benefit. Wherefore it has been frequently held that it is not negligence per se for a person to drive at an unlawful rate of speed, or upon the wrong side of the street, and if the nonobservance of the traffic ordinance did not result in an injury to the one for whose benefit it had been enacted. Segerstrom v. Lawrence, 64 Wash. 245, 116 Pac. 876; Beeman v. Puget Sound Traction Light & P. Co. 79 Wash. 137, 139 Pac. 1087; Mickelson v. Fischer, 81 Wash. 423, 142 Pac. 1160."

In Hansen v. Kemmish, 201 Iowa, 1008, 45 A.L.R. 498, 208 N. W. 277, the court said:

"But even though the injury complained of is not within the purview of the statute, the disregard of statutory duty may be a material fact and evidence of negligence. Union P. R. Co. v. McDonald, 152 U. S. 262, 283, 38 L. ed. 434, 14 Sup. Ct. Rep. 619; Pollock, Torts, 197; Georgia R. Co. v. Williams, 74 Ga. 723, quoted in Lonergan v. Illinois C. R. Co. 87 Iowa 755, 760, 17 L.R.A. 254, 49 N. W. 852, 53 N. W. 236."

It is also well settled that there is no presumption that an injury is the result of excessive speed, and the fact that the driver of a car was exceeding the speed limit at the time of an injury will not bar him from recovery for his injuries, unless the excessive speed was a

532

contributing cause of the injury. Huddy, Auto. § 393, page 408 and cases cited. Sheffield v. Stone, Ordean-Wells Co. 49 N. D. 142, 190 N. W. 315. Whether or not the speed of the automobile contributed to the accident was under all the facts and circumstances a question for the jury in the case at bar, and is fully covered in the opinion on the subject of contributory negligence. The trial judge read the speed statute to the jury without comment, which was more favorable to the defendants than if he had told them that they could only consider the violation of the statute, together with all the facts and circumstances, for the purpose of determining whether the·violation of the statute contributed to the injury.

The defendants claim that the negligence of the plaintiffs contributed to and was the proximate cause of their injury. Neither of the plaintiffs and none of the employees who were with them had ever been over that road before. The driver saw the dirt in the road, but says that it had the appearance of being newly surfaced. He could not see the ditch and did not know that it was there. There were no lights, or signs, that the road was closed, and no barricades, except, the dirt in the road; and as the learned trial judge in his very able memorandum opinion said:

"The road traveled by the plaintiffs was at the time a part of the main highway, number 1. . . . The highway upon which the plaintiffs were traveling was the one marked, at that time, as detour number 1, and they had therefore every reason to believe that it was open to travel in accordance with the laws of this state regulative of main highways."

The driver could see from 50 to 75 feet ahead, and could have stopped the car within less than 50 feet, but did not as the road appeared to him to be newly surfaced. The dirt had been taken from the excavation with scrapers and dumped on either side of the road, was from 12 to 14 feet wide on the east side of the ditch, and as it was dumped it would naturally fall from the center on each side giving it a sloping appearance so that it might appear much lower in approaching it in the nighttime than it really was. It was not the pile of dirt that injured the plaintiffs, but the ditch hidden behind it, which the plaintiffs could not see, and did not know was there. Under these facts and circumstances a jury might well say that a reasonably prudent

man was exercising ordinary reasonable care in following the guide signs and driving on to what appeared to be a newly surfaced road. "Reasonable care on the part of the plaintiff in an action for personal injuries may be inferred from circumstances." 13 R. C. L. § 426, p. 513; 29 C. J. 720; Wells v. Lisbon, 21 N. D. 34, 128 N. W. 308. The trial judge instructed fully on the question of contributory negligence, and more favorably to the defendants than the facts warranted.

Defendants also contend, that there is no evidence of any negligence on their part; that therefore a motion for a directed verdict, or for judgment notwithstanding should have been granted, and that the court erred in refusing certain instructions asked by the plaintiff on the question of defendant's negligence; that the undisputed evidence shows that the defendants exercised the same care, that a reasonably prudent person would exercise under the same or similar circumstances to notify the traveling public that there was an excavation in the road.

There was no lantern placed on the pile of dirt on the east side of the ditch, the direction from which the plaintiffs were coming and there was no light on the pile of dirt on the west side of the ditch for sometime before the accident. The plaintiffs did not see any light as they approached and they found the lantern after the accident on the side of the pile of dirt on the west side of the ditch; considerable of the oil had run out and covered the sides and bottom of the lantern. It is well settled that—

"A breach of the duty to erect barriers or to place lights, or reasonably and carefully to maintain obstructions to the public travel constitutes actionable negligence, for which the contractor is liable when it is the proximate cause of any injury to one lawfully using the street." 7 A.L.R. 1203, note. "As in other cases where the evidence is conflicting, or different inferences may reasonably be drawn from the facts shown, the issue is one for the jury." 29 C. J. § 486, p. 718. There is very little conflict in the evidence in regard to the barricade. The plaintiff testified that the dirt in the road appeared to be from a foot to a foot and a half high. The defendants testified, that it was about 4 feet high on the east side, and a little more than 5 feet on the west side. It is undisputed that there was no lantern on either pile of dirt as the plaintiff approached and that the lantern when placed on the pile on the west side of the ditch was 35 feet from

the east side of the pile of dirt on the east side, and that the ditch was concealed between the two piles of dirt. There is no general and infallible rule by which to determine whether a case based on the negligence of a town as respects the condition of a highway shall be disposed of as a matter of law or by the verdict of a jury; and whether the town has been guilty of negligence must largely be determined by the particular features of each case. Nicholson v. Stillwater, 208 N. Y. 203, 101 N. E. 858. Whether or not one contracting to make street improvements is negligent in failing to maintain barriers or watchmen to warn the public when he obstructs the traveled way is ordinarily a question for the jury. Law v. Bryant Asphaltic Pav. Co. 175 Iowa, 747, 7 A.L.R. 1189, 157 N. W. 175. And it is also ordinarily a question for the jury whether a guard or barrier actually erected was sufficient protection. 13 R. C. L. 428, page 517; Elliott, Roads & Streets, § 796; Lynch v. Snead Iron Works, 132 Ky. 241, 21 L.R.A. (N.S.) 852, 116 S. W. 693. It is ordinarily a question for the jury what precautions are reasonably necessary in a particular case, and whether barriers and lights were sufficient and whether the lights were properly arranged, were for the jury. Huddy on Automobiles, 8th ed. § 842.

We are of the opinion that the question of the negligence of the defendants was for the jury upon all of the facts, circumstances, and conditions. The instructions asked by the defendants of the trial judge were fully and fairly covered in the general instructions and there was no error in refusing the instructions asked. Error is assigned on the sustaining of objections to the following questions, viz.:

"Mr. Jardine, you have, in addition to your own experience, you have watched, have you, the methods other contractors use in protecting similar excavations of this kind?"

"With all of your experience in barricades state whether or not the using of a solid barricade such as a cable would be feasible?"

We are of the opinion that the court allowed the defendants great latitude in testifying as to the nature and kind of barricades used. For instance, the defendant, Mr. Jardine, testified:

"Whenever we can get a good-sized pile of dirt, we use that for a barricade, where the excavation is small we are compelled to put up some other form of barricade, put some stakes in the ground and a

3 x 12 or heavy timber across." "Inevitably, the wooden barricade, or the barrier we put up is knocked down and smashed up and quite often the people who hit them are injured. With a dirt barricade, they strike the dirt barricade and are stopped. If we are hauling gravel we put the gravel on one side, that makes a good barricade, and put a lantern on top of it, and that way we are all protected. The barricade is immovable, as far as the traveling public is concerned until moved as it should be, wherever possible we have used a dirt barrier."

The defendants are thus permitted to testify as to the kind of a barrier, why they built it, and why that kind of a barrier is the safest and best, and whether a cable was feasible or not, was entirely immaterial.

The judgments in both cases are affirmed.

NUESSLE, Ch. J., and BURR, BIRDZELL, and CHRISTIANSON, JJ., concur.

### On Petition for Rehearing.

BURKE, J. In a petition for a rehearing, appellant insists that the following instruction should have been given to the jury by the trial court, viz.:

"You are further instructed that it was the duty of this plaintiff to have his car under such control that he could bring it to a standstill within the distance he could plainly see objects ahead, and I charge you that if plaintiff failed in his duty and his failure contributed to cause the accident, then he cannot recover damages and your verdict must be for the defendants regardless of whether you find that the defendants were themselves negligent."

The undisputed evidence is: That Madsen who drove the car had driven cars since 1916; had driven this particular car often; it had good brakes, an automatic windshield wiper; there was a mist, the air was damp, but the road not wet; the driver saw the dirt when he was from 50 to 75 feet away and could have stopped the car within 15 feet at the rate of speed he was driving, but did not for the reason that the dirt in the road looked to him as a newly built up road; he did not know the ditch was there; he could not see it until the car fell into it.

The rule contended for by appellant does not apply in this case for reason that the driver could have stopped the car within the distance he could see, and the question of whether the plaintiff was negligent or not in not stopping the car when he could have stopped it within the distance he could see was for the jury under all the facts and circumstances.

It is negligence to drive a car so fast that you cannot stop it within the distance you can see. It is the reckless speed which makes it negligent. That element is absent in this case and the rule does not apply.

A case very much in point is the case of Tutsch v. Omaha Structural Steel Works, 110 Neb. 585, 194 N. W. 731.

Appellant further contends the refusal to give the following instruction was error, viz.:

"I further charge you that the fact that the lantern which, the defendants state, was placed upon the dirt pile or embankment, blew out, or was extinguished in some way, does not prove or mean that defendants were negligent and liable in damages here unless it is further shown that said lantern was extinguished through some fault of theirs. Defendants did their full duty if they exercised reasonable care in their effort to notify the traveling public of the excavation in the road and the fact that the lantern was extinguished through no fault of theirs and cannot and does not, in itself, make them liable to the plaintiff here."

Instead of the instruction asked the court gave the following instruction, which is assigned as error, viz.:

"Now there has been some testimony here touching the question of the light having blown over, and having gone out. Now, with regard to that matter, I will say to you, members of the jury, that is entirely for you to say whether the defendants exercised such care as an ordinarily prudent person would exercise under the like circumstances, in safeguarding the light, so as to remain standing over night, and thus be a signal to approaching passengers, or drivers. Of course, it is a rule of the law, that should you find that through any unforeseen act, or any circumstance that the defendants could not avoid, or guard against, the light blew away, or washed away, through some act of God, as it is known in the law, or even some act of trespassing, or other unavoidable act, then the defendants would be excused, under

the law, for they are not expected to do the impossible. But it is for you to say, from all the facts and circumstances appearing in evidence, in this case, whether the defendants exercised such degree of care, of which I have spoken here, to safeguard the traveling public on that highway."

We are of the opinion that the instruction given by the trial court covers fully every question presented by the requested instruction and was as favorable as the defendants were entitled to.

In the case of Wells v. Lisbon, 21 N. D. 34, 128 N. W. 308, the court said:

"If, as a fact, several lights were placed, the failure in less than an hour of all but one was evidenced, from which the jury might conclude that they were inadequate or improperly placed to serve the purpose contemplated."

In the case of Tutsch v. Omaha Structural Steel Works, supra, the court said:

"It is a debatable question whether a red light placed at the side of the road on the pile of dirt was a sufficient warning of the impassability of the road itself."

The evidence in the case at bar is that witness Tuveson stated: "I didn't place the lantern there, but I saw him place it there. I do not know which of the men placed it there. I saw it placed there and then we went home."

Witness Folk stated in substance, that he saw the lantern there, but does not know who put it there and there is no evidence of how it was placed or made secure; it was placed on the pile of dirt on the west side of the ditch and it would seem to be a debatable question whether the placing of a lantern on the dirt on the west side of the ditch was a sufficient warning to travelers coming from the east and a protection against a ditch 50 feet long across a regular highway on a section line, but we need not decide this question as there was no error in refusing the instruction as it was entirely covered by the instruction given and as favorable to the defendants under all of the facts and circumstances than they were entitled to. Other errors assigned are without merit and a rehearing is denied.

NUESSLE, Ch. J., and BURR, BIRDZELL, and CHRISTIANSON, JJ., concur.