AMOS W. HUNT ET AL., APPELLEES, V. CHICAGO. BURLINGTON & QUINCY RAILROAD COMPANY, APPELLANT.

FILED APRIL 3, 1914. No. 17,544.

1. **Appeal:** MODIFICATION OF REQUESTED INSTRUCTION: EXCEPTION. While the district court is prohibited by section 4764, Ann. St. 1911, from modifying a requested instruction "by interlineation or erasure," a modification so made will not ordinarily constitute reversible error, unless it affirmatively appears from the record that at the time the instruction was given an exception was noted, not to the fact of such modification merely, but to the manner of making the same.

2. **Carriers:** INJURY TO SHIPMENT: CONTRIBUTORY NEGLIGENCE. The rule that, if negligence on the part of a person injured contributed to the injury, he is not entitled to recover therefor applies as well where the injury is to plaintiff's property as to where it is to his person, and in cases of contract as well as those of tort.

3. ———: ———: PLEADING. To enable a common carrier to avail itself of the general rule applicable where a shipment of live stock is accompanied by a caretaker, selected by the shipper, it is incumbent upon it to specially plead and prove such fact.

4. **Appeal:** THEORY OF CASE. Where the record on appeal to this court clearly shows that the case was tried and determined in the court below upon a certain theory, it will ordinarily be considered and decided in this court upon the same theory, even though such theory may be somewhat at variance with the pleadings.

5. **Carriers:** INJURY TO SHIPMENT: MEASURE OF DAMAGES. The proper measure of damages for injury to a shipment of horses is the difference in their reasonable market value at the time and in

Hunt v. Chicago, B. & Q. R. Co.

the condition in which they were delivered at their agreed destination and their reasonable market value when and in the condition in which they should have been delivered.

6. ———: ———: ———. In an action against a common carrier for damages under a contract for the shipment of live stock, the damages which the plaintiff is entitled to recover are such as may fairly and reasonably be considered either arising naturally, i. e., according to the usual course of things, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it.

7. ———: ———: PETITION. The allegations in the petition, set out in the opinion, *held* not sufficient to support a recovery upon plaintiffs' second cause of action.

8. Trial: SEPARATE CAUSES OF ACTION: VERDICT. Where the petition counts upon two causes of action, the first of which is sustained by sufficient allegations in the petition, and the second not, and the verdict of the jury is a single verdict, and is for a sum in excess of the first cause of action, thus showing an allowance by the jury upon both causes of action, but not showing how much was allowed upon either separately, the entire verdict must fall.

9. Appeal: CONFLICTING EVIDENCE. Where the evidence submitted to a jury is sufficient to sustain a verdict either way, the verdict of the jury thereon will ordinarily control.

APPEAL from the district court for Furnas county: ROBERT C. ORR, JUDGE. *Reversed.*

*Byron Clark, W. S. Morlan* and *E. E. Whitted,* for appellant.

*Lambe & Butler, contra.*

FAWCETT, J.

From a judgment of the district court for Furnas county in favor of plaintiffs for damages to a shipment of horses over defendant's railroad, defendant appeals.

The petition alleges that on March 14, 1911, plaintiff delivered 25 horses in good condition to defendant at Wilsonville, Nebraska, for shipment to Bristolville, Ohio, the shipment to be over defendant's road from Wilsonville to Chicago; that in conveying the horses defendant operated

its train in such a careless and negligent manner that the horses were jammed, thrown about, etc., in such a manner that they were rendered unmarketable, to plaintiffs' damage in the sum of $320. A second cause of action for $168 is then set out, which will be considered under defendant's seventh assignment of error. The answer admits the corporate capacity of defendant; that it is a common carrier between Wilsonville, Nebraska, and Chicago, Illinois; denies every allegation in the petition not specifically admitted, and alleges that, if a shipment of horses was made over the defendant's road by plaintiffs, all delays, if any, suffered en route were due to the negligence and carelessness of plaintiffs and made at their request, and not due to any carelessness on the part of defendant; that all loss and damage sustained by plaintiffs, if any, were due to the carelessness and negligence of plaintiffs, directly contributory thereto, and in no manner due to any carelessness or negligence on the part of defendant. The reply is a general denial.

Defendant's first contention is that any injury received by the horses was largely due to the overcrowding of the car by plaintiffs; that such overcrowding will cause horses to become restless, and in the event of a horse "getting down" it is impossible to get him up again without unloading the whole car. When the car reached Wymore, one mare was down and being trampled by the other horses. At the request of an employee of plaintiffs, who was accompanying the shipment, the horses were unloaded and kept at Wymore about 24 hours, when they were again all loaded into the car. Before the train was ready to leave Wymore, the same animal was down again, and at the request of plaintiffs' employee the horses were again unloaded and held in defendant's yards at Wymore another 24 hours, during which time the employee communicated with plaintiffs, and by their direction left this animal at Wymore and reloaded the other 24 horses. From that time until the end of the run there is no evidence of any further unusual delay. From this defendant argues that any delay in delivering the horses at their final destination was by

reason of the 48 hours' delay at Wymore, which was at plaintiffs' request, and which request, it is argued, was made necessary by plaintiffs' negligence in crowding so many horses into the car. Plaintiffs' contention is that they were not responsible for this delay, for the reason that it was necessitated by the negligence of the defendant in operating its train between Wilsonville and Wymore in such a negligent and careless manner as to cause the condition existing when the train reached Wymore.

On this branch of the case defendant tendered its instruction No. 13, as follows: "The court instructs the jury, if you find from the evidence that the plaintiffs shipped a car-load of horses over the defendant's railroad from Wilsonville, Nebraska, to Chicago, Illinois, and that, in loading said horses into defendant's car at Wilsonville, the plaintiffs negligently loaded more horses into said car than could be safely and properly transported therein between said places, and such overloading and crowding of said horses into said car contributed in causing the injury to said horses complained of in plaintiffs' petition, then the plaintiffs were guilty of contributory negligence, and they cannot recover in this action, and your verdict should be for the defendant." On this instruction appears the following notation by the court: "Modified by interlineation." As a matter of fact the court modified the instruction by both erasure and interlineation. Section 4764, Ann. St. 1911, provides: "If the court refuse a written instruction, as demanded, but give the same with a modification, which the court may do, such modification shall not be by interlineation or erasure, but shall be well defined and shall follow some such characterizing words as 'changed thus,' which words shall themselves indicate that the same was refused as demanded." The court modified the instruction by erasing the words "contributed in causing," and by interlining the word "caused." It is argued that this act constitutes reversible error. It is a matter of surprise that the court should thus modify an instruction in the face of such a statute; yet we would be reluctant to reverse a case on that ground, and would not do so un-

less it appeared that at the time the instruction was given an exception was noted, not to the fact of modification merely, but to the manner of making such modification. In this case the exception was: "To the refusal of the court to give this instruction as requested the defendant excepts, and to the giving of this instruction as modified by the court the defendant excepts." This is not an exception to the manner in which the modification was made, but to the substance of such modification, and in that respect alone the exception should be treated. As requested by defendant, the instruction submitted the defense of contributory negligence, and told the jury that, if the negligence of plaintiffs "contributed in causing the injury," plaintiffs were guilty of contributory negligence. The evidence being conflicting both upon the question as to whether the car was negligently overloaded and upon the question as to whether there had been rough handling by the defendant, we think the defendant was entitled to have the question of contributory negligence submitted to the jury as requested. 29 Cyc. 507, and cases there cited. By the modification, the court, instead of telling the jury that plaintiffs would be guilty of contributory negligence if their overloading and crowding the horses into the car contributed in causing the injury, by substituting the word "caused" told the jury, in effect, that the plaintiffs would not be guilty of contributory negligence unless the overloading and crowding of the horses into the car *caused* the injury; in other words, that it was the sole cause of the injury. We think the instruction as modified was clearly prejudicial, and, being upon an important issue in the case, constituted reversible error. The most that the court should have done, if it decided to modify the instruction, would have been to have told the jury that, if "such overloading and crowding of the horses into the car was the proximate cause of the injury," plaintiffs would be guilty of contributory negligence.

In the second assignment it is urged that the horses were accompanied by a caretaker, and the general rule in such

cases is attempted to be invoked by defendant, but no such issue is tendered in the pleadings.

In the third assignment it is contended that a common carrier is not an insurer against delay in the transportation of live stock, and *Nelson v. Chicago, B. & Q. R. Co.*, 78 Neb. 57, is relied upon. We think this assignment is practically covered by what we have said as to the first assignment.

By assignment No. 4 it is contended that the court, by instructions 8 and 9, introduced an issue not presented by the pleadings. By this instruction the jury were told that a common carrier of freight in this state cannot, by a contract with the shipper, limit its liability. This issue was not raised by the pleadings, but counsel for plaintiffs contend that defendant forced it into the case by offering certain documentary evidence. As the case must be reversed on other points, it is unnecessary to decide this question, as it will not arise again on another trial for the reason that, as to interstate shipments, the supreme court of the United States, in *Chicago, B. & Q. R. Co. v. Miller*, 226 U. S. 513, has settled the law upon that point.

The fifth assignment is that the court erred in giving inconsistent and contradictory instructions. The record hardly justifies this contention.

The sixth assignment is: "In an action against a carrier for injury and delay in transportation of live stock, evidence of the market value of such stock at places other than the point of delivery is inadmissible." The case seems to have been tried in the court below upon the theory that the contract of the defendant was to transport plaintiffs' horses from Wilsonville, Nebraska, to Chicago, Illinois. While the petition alleges that plaintiffs delivered the horses to defendant at Wilsonville, Nebraska, for shipment to Bristolville, Ohio, said shipment to be over defendant's road from Wilsonville to Chicago, there is no evidence in the record that defendant made any contract with plaintiffs beyond the line of its own railroad. The contract introduced in evidence makes no reference to Bristolville, but gives the initial and terminal points at Wil-

sonville, Nebraska, and Chicago, Illinois. That plaintiffs tried the case upon that theory is shown by their requested instruction No. 7, as follows: "The court further instructs the jury that, if you .find for the plaintiffs you will assess their damages in such sum or amount as they have proved by a preponderance of the evidence that they have sustained as a result of the negligence and carelessness of the defendant company, and no more, not exceeding the amount claimed in their. petition. The rule for the measure of damages in such a case is the difference between the reasonable market value of the horses in the condition in which they were turned over to the connecting carrier and the condition in which the same would have arrived had the company used usual, ordinary care and diligence in transporting and delivering said shipment to the connecting carrier, together with the necessary expenses incurred in caring for said horses as a direct and natural consequence of the misconduct of the defendant or its agents." Chicago was the point where the horses "were turned over to the connecting carrier," and the jury were told that the measure of damages is the difference between the reasonable market value of the horses "in the condition in which they were turned over to the connecting carrier" and the condition in which they would have arrived had the company used usual, ordinary care in transporting and delivering them "to the connecting carrier." This clearly shows that plaintiffs were treating Chicago as defendant's terminal point. Upon the question as to the reasonable market value of the horses, in either of the conditions named, at Chicago, or when they were delivered to the connecting carrier, the record is barren of proof. No attempt was made to show the value of the horses in either of the conditions named at that time and place. It was admitted by one of the plaintiffs upon the witness-stand that they had filed a claim with the connecting carrier, the Pennsylvania Railroad Company, for damages to the horses in that shipment. There is no attempt to prove how much of the damage, if any, was sustained while the horses were being transported by the defendant, and how much

after they were turned over to and transported for 300 miles by the Pennsylvania Railroad Company. As the parties have themselves tried the case upon the theory that there were two separate shipments, one from Wilsonville to Chicago, for which it is attempted to hold the defendant liable, and the other from Chicago to Bristolville, Ohio, for which plaintiffs are demanding damages from the Pennsylvania Railroad Company, it must be disposed of here upon the same theory. The only evidence offered by plaintiffs was as to the condition and value of the horses when they were loaded at Wilsonville, their value at St. Joseph, Missouri, when they passed through that city en route, and their condition and value when they reached Bristolville, Ohio. This cannot be held to be competent evidence of the value of the horses in either of the conditions named at their point of destination in Chicago. *Atchison, T. & S. F. R. Co. v. Lawler,* 40 Neb. 356; *Chicago & N. W. R. Co. v. Dickinson,* 74 Ill. 249, reaffirmed in *Plaff v. Pacific Express Co.,* 251 Ill. 243; *Scott v. Texas C. R. Co.,* 127 S. W. (Tex. Civ. App.) 849.

The seventh assignment is that, in an action for damages caused by delay, only such losses can be recovered as were reasonably contemplated by both parties at the time the contract of carriage was made as likely to arise from a breach, and not losses arising out of circumstances then wholly unknown to the carrier. Under this assignment defendant contends that plaintiffs could not recover anything upon the second cause of action, set out in their petition, viz., for damages by reason of having to readvertise a sale of the horses at Bristolville, Ohio, necessitated, as plaintiffs argue, by reason of the fact that through defendant's negligence the horses did not reach that point in time for a sale which had already been advertised, and for which the horses would have been received in time had it not been for the negligent delay of defendant. There is nothing in the contract, or in the evidence, to show that defendant was notified at any time at or prior to its shipment of the horses that plaintiffs were shipping the horses to Bristolville for the purpose of disposing of them at a

95 Neb. 48

prearranged sale, and hence there could be no recovery upon plaintiffs' second cause of action. *Hadley v. Baxendale,* 9 Exch. (Eng.) *341; *Karbach v. Fogel,* 63 Neb. 601. Plaintiffs meet this contention with the argument that the damages claimed for injuries under their second cause of action are not special damages, and hence do not come within the rule contended for by defendant. With this contention we cannot agree. The trouble with plaintiffs' second cause of action is that their petition does not state facts sufficient to constitute a cause of action. Their allegation is: "That the defendants (plaintiffs), relying on the defendant company conveying said horses to the destination safely and promptly, advertised a public sale of said horses for on or about the 21st day of March, 1911, which was long after said horses should have reached their destination had the defendant company used usual or ordinary diligence and delivered said horses at their destination within the ordinary and usual time for making delivery of such shipments; that, by reason of said delay and the emaciated condition of said horses, plaintiffs were compelled to and did expend large sums of money (which they would not otherwise have done) for readvertising the sale of said horses, and for additional feed and for caring for said horses during said time, all of which was due to the defendant's negligence and carelessness, which sums of money so expended aggregated the sum of $168." It will be seen that these allegations not only do not show that the defendant was advised of this proposed sale, with which they were trying to connect, but they fail to state when the horses did in fact arrive at Bristolville, or to state any fact, other than a negative conclusion, that it was necessary for them to readvertise their sale. We think that plaintiffs were not entitled to recover on this cause of action for both reasons, viz.: First, that the petition did not state a cause of action; and, second, that if it had stated a cause of action there is an entire absence of proof of notice to or knowledge by the defendant of plaintiffs' purpose in shipping the horses to Bristolville. The amount claimed in the first cause of action was $320, and in the

second $168. The verdict was for $342.14, together with interest from March 22, 1911, total, $355, showing an allowance by the jury upon both causes of action, but not showing how much was allowed upon either separately. Under these conditions the entire verdict must fall.

The eighth assignment is misconduct of counsel for plaintiffs in his closing argument to the jury. We deem it unnecessary to consider this point, for the reason that counsel who represented plaintiffs, having been elevated to the district bench, will not have an opportunity to exercise his forensic powers upon the next trial of the case. Moreover, from what counsel for plaintiffs say in their brief upon this point, the language used in the closing argument was provoked by similar misconduct of counsel for defendant in his address to the jury.

The final assignment is that the verdict is not sustained by the evidence. In the particulars hereinbefore referred to, this is true. As applied to the claim that defendant operated its cars in such a negligent and careless manner as to injure the horses in transit, the evidence is quite conflicting. Such being the fact, the verdict of the jury would have to control upon that question.

For the errors above pointed out, the judgment of the district court is reversed and the cause remanded for further proceedings.

                                        REVERSED.

SEDGWICK, J., dissenting.

The majority opinion holds that the only method of proving the damage of the plaintiff by reason of the injuries complained of was to prove the market value of the horses at Chicago, at the time and in the condition in which they reached that place, and "their reasonable market value when and in the condition in which they should have been delivered." The destination of the shipment was Bristolville, Ohio. The opinion assumes that the shipment was billed over the defendant's road to Chicago only. The bill of lading does not appear in the abstract, and I think that it is immaterial whether the defendant billed

the shipment through to its destination, or only to the point where it was to be delivered to a connecting carrier. In either case the rule announced in the opinion is incorrect and wholly unsupported by the authorities. Such a rule would generally prevent any recovery in a case of this kind. The market value of a mixed lot of horses at a place which they passed through without stopping a sufficient length of time to allow witnesses who were familiar with the market at that place to inspect them and become familiar with their class and description could not ordinarily be readily proved. It would be peculiar hardship to apply such a rule to this class of shipment, and it is not the rule under the authorities applied to any shipments. This case was tried upon the theory that the defendant would only be liable for such damages as were caused by injury upon the defendant's line, and, in order to so limit it, the instruction quoted in the majority opinion required the jury to consider the condition of the horses when they were delivered by the defendant to the connecting carrier, and under the theory which the case was tried this was proper. The instruction, however, did not contemplate that the proof in regard to the value before and after the injury should be limited to any place between the place of shipment and the destination of the shipment. Proof, then, of the value of the horses when they arrived at their destination at Bristolville, Ohio, in the condition that they were when turned over to the connecting carrier by the defendant, and their value as they would have been if the defendant had performed its duty and delivered them, without negligence, to the connecting carrier, was competent proof of the damage caused by the defendant's negligence. "In an action against a railroad company to recover damages for an alleged unreasonable delay in the transportation of cattle, it is not error to take as the basis for computation of damages the difference in the market price of the cattle in the market to which they were being shipped, where their destination was known to the defendant, although its contract covered their transportation only over its own line, and their

delivery to a connecting carrier for the remainder of the shipment." *Missouri, K. & T. R. Co. v. Truskett,* 104 Fed. 728; 13 Ency. of Evi. 570 *et seq.* Even where the bill of lading provides that the value at the place of shipment shall govern, the evidence of the value at the destination is admissible, in the absence of better evidence. *Harris v. Panama R. Co.,* 58 N. Y. 660. In this case the ultimate object of the proof is to show the damage to the property. In ordinary cases this can be done most readily by proving the value before and the value after the injury. This difference in value in the case of a mixed lot of horses would not be much different in one place from what it would be in another. If this value at the destination of the property can be proved, it is generally conceded to be the most satisfactory. Where this proof is not obtainable, other evidence may be received. When the property is wholly lost or destroyed, its value is the ultimate object of proof, and in such case the rule adopted in this state, and in some others, is that the value at the destination of the shipment must be proved. *Atchison, T. & S. F. R. Co. v. Lawler,* 40 Neb. 356; *Chicago & N. W. R. Co. v. Dickinson,* 74 Ill. 249. These cases are mistakenly cited in the majority opinion as holding the doctrine which that opinion announces. In those cases the shipment was entirely lost, and it was held that the value at the place of the destination was the measure of damages.