MIKE BILLINGSLEY, Plaintiff and Respondent, v. McCORMICK TRANSFER COMPANY, and Sam More, Defendants and Appellants.

(228 N. W. 424.)

Opinion filed December 24, 1929.

*Conmy, Young & Burnett,* for appellants.
*Shure & Murphy,* for respondent.

BURR, J. The plaintiff seeks to recover damages which he says accrued to him through a collision caused by the negligence of the

defendants. He charges that the defendant Sam More was an employee of the McCormick Transfer Company, a corporation and on June 3, 1928, as such employee, was driving westward with an automobile truck or moving van belonging to the company, that he stopped such van in the night time on one of the main highways of this state, and east of the village of Tappen, without taking precaution "to make said truck visible with lights in order to warn other automobiles approaching said truck and in order that other vehicles driving on said highway might know of the presence of said truck and might be able to pass such truck without collision with it." He then charges that while driving westward on said highway the automobile in which he was riding collided with this van by running into it in the rear crushing the front end of his automobile, breaking his windshield, totally damaging the car and causing him wounds and injuries.

The defendants admit there was a collision but allege that any injuries which the plaintiff suffered were caused by his own negligence, and not by the negligence of the defendants.

At the close of the entire case defendants moved the court to direct the jury to return a verdict in favor of the defendants which was denied. The jury returned a verdict in favor of the plaintiff and from this judgment defendants appeal.

In the automobile belonging to the plaintiff there were at the time of the accident four persons—the plaintiff, his sister Esther, his brother Ted, and a cousin by the name of Charles Coon. The sister commenced an action against these defendants for injuries which she claimed to have suffered because of this collision, which action is the subject of a separate opinion of this court. However, so far as the taking of testimony is concerned the cases were tried together. The specifications of error on appeal are united. There are twelve of these specifications of error; but so far as this case is concerned we need not concern ourselves with other than the alleged error of the court in overruling the defendants' motion for a directed verdict in its favor as against this plaintiff. This motion was based upon four grounds as follows:

"1. There is no testimony showing negligence on the part of the defendant proximately causing the loss and injury claimed.

"2. The undisputed testimony shows the plaintiff's agent, a brother and the driver of his car to have been guilty of contributory negligence as a matter of law.

"3. There is no testimony to show a proper measure of damages in the case.

"4. On the ground and for the reason that the undisputed testimony shows the parties hereto to have been engaged in a common errand, and the negligence of the driver therefore is the negligence of the plaintiff, and such negligence contributed to and caused the accident and there can be no recovery here."

The testimony is singularly free from contradiction. The only real dispute in the record is whether the van had lights displayed at the time of the collision. The driver says that the tail light was visible for a long distance and that he had head lights. This is corroborated by the testimony of at least three other witnesses. On the other hand at least four witnesses testify that they saw no lights on the van—two of these being the plaintiff in this case and his sister and the others being disinterested parties driving eastward and who met and passed the van shortly before the accident. The undisputed testimony shows that the car in which the plaintiff was riding was a Ford coupe, practically new and belonged to him; that the Billingsley family reside in Linton in Emmons county, and that plaintiff, his brother and his cousin had gone to Moorhead, Minnesota, for the purpose of getting the sister who was attending school there. On the way home the four of them were riding in this coupe; that the brother Ted was driving and sat on the left hand side of the car; the cousin sat next to him and the plaintiff sat on the right hand side holding his sister on his knee; while thus driving between Jamestown and Tappen and about 10:30 p. m. they collided with this moving van; the defendant More was traveling west on the highway and owing to some magneto trouble had stopped the van on the extreme north side of the road running east and west in order to make repairs; and that he had just finished the repairs when the collision occurred. . .

It appears that just before the accident a man by the name of Geske and his wife were driving eastward toward Jamestown in his car driven by his daughter and in which the young man now her husband

was riding as a passenger. These passed the van and had proceeded about ten rods when they met the plaintiff driving westward. Both men testified there were tail lights on the van at that time. They went on about a few rods, heard the collision, stopped and went back. The plaintiff says that shortly before the collision a car passed him. During the argument in this court much was said in regard to dust raised by this car in which the witness Geske was and which obscured vision, but the record is silent as to this. The only reference to dust we can find is this testimony of the plaintiff and one of his witnesses. Plaintiff was asked this question:

"Did you notice whether or not that car in passing you kicked up a little dust?" and replied, "Yes, it did." This is all he says.

A witness for the plaintiff—one who testified the van had no lights shortly before the accident—gave this testimony:

"What was the condition of the roads with reference to being dry?" "They were dry, yes somewhat dusty?"

A. "Yes, sir dusty."

"What was the condition with reference to darkness or light?"

"Well it was a regular summer night. I don't think there was any moon but it was not cloudy."

There is no other reference to dust. It was argued that this dust may have prevented the plaintiff and those in the car with him from seeing the van before they came upon it. Esther, plaintiff's sister, and the plaintiff in the companion case, gave this testimony in response to questions:

"That is the main highway?" A. "Yes sir."

"A well traveled road?" A. "Yes sir."

"Much traveled road?" A. "Yes sir."

"It was not raining or anything of that kind that night was it?" A. "No sir, it was not."

"A nice clear night wasn't it?" A. Yes sir."

No one testified that any dust obscured vision.

The undisputed testimony shows that the van was parked on the

right side of the road so close to the shoulder that when the driver stepped out on the right side of the van he stepped into the ditch. A witness whose duty it was to maintain the road and was known as the maintenance man, testified that the road at the place where the accident took place was from 26 to 33 feet wide between the shoulders, that the north side of the road was good and solid to the shoulders and that the width of the road between the shoulders was 26 to 30 feet. There is no dispute as to this. The van was 7 feet wide consequently there was between 19 and 23 feet of good solid road to the south of the van.

The plaintiff was not driving his own car, it was being driven by his brother, but his brother was his agent. It was the duty of the driver of the car to keep watch of the road. The plaintiff says his lights were in good working order, that the beam of the lights struck the road 50 feet in front and that the lights were diffused sufficiently to see across the road, but he does not give an estimate as to how far in advance the lights projected, but the angle was such that the bright light struck 50 feet in front of the car. Thus when they were driving they had lights which lighted up the width of the road in front of them and where the bright light was such as to strike 50 feet in front. The testimony shows that for some distance east of the van the road was straight and that some distance west of the van—some say as close as 150 feet—there was a slight curve. The plaintiff was coming from the east therefore for a long distance east had a straight track.

The defendants urge two grounds why a verdict should have been directed for them in this case. The first proposition is that assuming they were negligent in not having lights properly displayed upon the van nevertheless the negligence of the plaintiff was the proximate cause of the collision; that is, that the failure of the plaintiff to keep a lookout and his failure to observe the van was the real cause of the collision in that either he did not have the proper lights himself, or he was going at such an excessive rate of speed that he did not have his car under control, or that he was driving at night without keeping his eye on the road. The defendants urge that if the lights of plaintiff's car were as plaintiff and his witnesses say they were then he could have seen the car in ample time to have veered and passed it if he had his

car under control, and if he was observing the road; therefore it was his own negligence which caused him to run into the rear of the van.

The second proposition is this—considering this case from the view most favorable to the plaintiff he was guilty of such contributory negligence as precludes recovery.

In this case we need consider only the question of contributory negligence. The court in the charge to the jury referred to contributory negligence as follows:

"If you find from all of the evidence, that if the plaintiff had been driving at a reasonable rate of speed and had kept a vigilant lookout ahead, he could have seen and would have seen the parked truck, and would have had time and opportunity by having his car under proper control to have avoided the accident, then the plaintiff contributed to the accident, or if you find that he was the sole cause of it, then and in that case the plaintiff Mike Billingsley would not be entitled to recover, either for personal damages or for damages to his automobile."

Several requests made by the defendants for further instruction regarding contributory negligence were not given by the court. It is claimed this was error and that the court had not defined contributory negligence sufficiently. However, under all the facts in this case there was a sufficient description in the charge to bring the matter of contributory negligence to the attention of the jury, so that application of the principles stated to the facts as they existed could be made intelligently.

We cannot say that stopping on the highway at night time, because of necessity, after drawing to the extreme right side of the road, is in itself considered an act of such negligence as makes one absolutely liable for damages in case of collision and prevents the question of contributory negligence being raised. As said in Karpeles v. City Ice Delivery Co. 198 Ala. 449, 73 So. 642, "The driver of an automobile . . . may . . . within reason . . . stop and stand without being held negligent and liable for resulting injury."

Disregard of statutory duty may be a material fact and evidence of negligence (Axelson v. Jardine, 57 N. D. 524, 223 N. W. 32), but this is not a question of "parking" for the term "park" in automobile language means more than a momentary or temporary stopping

to examine the car or make necessary repairs. It has in it the element of a purpose unconnected with the car itself, and the intent to leave it there in a supposedly safe place while engaged in other business or pleasure. See Dare v. Boss, 111 Or. 190, 224 Pac. 648. Contributory negligence presupposes negligence on the part of the other party, and also that the party claiming damages was himself guilty of negligence; and where his negligence was of such a character as to be the proximate cause of the injury and without which the injury would not reasonably have been anticipated then he cannot recover for it would be his negligence which would be the "nearest independent cause adequate to produce and which did bring about the accident." Under § 5948 of our Code while each defendant would be responsible for an injury occasioned to another by his want of ordinary care or skill in the management of his property yet there is no such responsibility when "the latter has wilfully or by want of ordinary care brought the injury upon himself." The defendants urge that the plaintiff brought this injury upon himself because he failed to exercise ordinary care. The question of negligence is for the jury to determine when reasonable men might draw different conclusions from facts. Heckman v. Evenson, 7 N. D. 173, 73 N. W. 427; La Point v. Hodgins Transfer Co. 48 N. D. 1032, 188 N. W. 166; Axelson v. Jardine, supra, "In order to constitute contributory negligence as a matter of law the facts and circumstances must be such that no other inference can fairly and reasonably be drawn therefrom." Haugo v. Great Northern R. Co. 27 N. D. 268, 145 N. W. 1053; Dougherty v. Davis, 48 N. D. 883, 187 N. W. 616. As stated in Ferm v. Great Northern R. Co. 53 N. D. 543, 207 N. W. 39: "When but one conclusion can reasonably be drawn from conceded facts, the question of negligence is a question of law."

It is commonplace that even if the driver of the van were negligent, yet if the plaintiff, by the exercise of ordinary care, could have avoided the accident, notwithstanding the negligence of the driver of the van, and did not exercise such care he cannot recover. This applies even when the negligence of the driver of the van is said to be a violation of the law regarding lights. No one can be presumed to wilfully and carelessly crash into even an unlighted machine and then say he is entitled to damages because the other party was negligent as a matter

of law even though the violation of the statutory requirement may be negligence per se. Such negligence does not relieve the plaintiff from the consequences of contributory negligence.

Contributory negligence is a complete bar to recovery (Fuller v. Friedman, 135 Wash. 116, 237 Pac. 293), and the rule is applicable to injury to property as well as to person (Hunt v. Chicago, B. & Q. R. Co. 95 Neb. 746, 146 N. W. 986), even though "the contributory negligence is of a negative character such as lack of vigilance." (Young v. Campbell, 20 Ariz. 71, 177 Pac. 19; 45 C. J. 497.) As said in Little v. Hackett, 116 U. S. 366, 368, 29 L. ed. 652, 654, 6 Sup. Ct. Rep. 391: "One cannot recover damages for an injury to the commission of which he had directly contributed—and it matters not whether that contribution consists in his participation in the direct cause of the injury, or in his omission of duties, which if performed, would have prevented it. If his fault, whether of omission or commission, has been the proximate cause of the injury, he is without remedy against one also in the wrong." As said in Costello v. Farmers Bank, 34 N. D. 131, 140, 157 N. W. 982: "His injury was the result of a want of ordinary care on his part, which directly contributed to cause the same. While the question of contributory negligence is usually one of fact for the jury, yet where . . . as in the case at bar . . . the facts are not in dispute, it becomes a pure question of law for the court." The facts in this case are not in dispute because we eliminate the testimony of defendants and their witnesses and take the statements of the plaintiff himself at their full face value. Stormy night, dusty roads, passing vehicles, distracting circumstances, sudden emergencies are all nonexistent. His lights were good, the car could be controlled, the road was wide and in excellent condition. The physical facts are such that no conclusion can be reached but that of carelessness, heedlessness and negligence of the driver of plaintiff's car; that this was the real cause of the accident or so contributed to it that without it no collision could have occurred. See De Haan v. Wolff, — Minn. —, 227 N. W. 350.

When we review the facts in this case it must be apparent that the collision would not have happened were it not for the negligence of

the plaintiff whether we say that his was the prime negligence or whether it was merely contributory negligence.

It is clear from the plaintiff's own testimony if he were keeping a lookout he would have seen the van in ample time to have avoided it and passed it on the road. He testified they were traveling at between 30 and 35 miles per hour in his new Ford, other persons testified he was going at a greater rate of speed than 40 miles per hour. Irrespective of this feature it is clear the parties were negligent in the outlook kept and that if it were not for his negligence there would have been no collision. The sufficiency of the evidence being challenged by the motion for a directed verdict and the record clearly showing plaintiff guilty of contributory negligence the judgment for the plaintiff must be reversed and his action dismissed. It is so ordered.

BURKE, Ch. J., and NUESSLE, BIRDZELL, and CHRISTIANSON, JJ., concur.