Vivian COSE, Plaintiff and Respondent,

v.

TOWNER COUNTY, a Public Corporation, and Roy Peterson, Defendants and Appellants.

No. 7795.

Supreme Court of North Dakota.

Dec. 10, 1959.

On Rehearing May 2, 1960.

Traynor & Traynor, Devils Lake, for appellants.

Duffy & Haugland, Devils Lake, for respondent.

BURKE, Judge.

This is an action for wrongful death. Plaintiff's decedent met his death in a collision between a car driven by him and a caterpillar propelled road maintainer operated by the defendant, Roy Peterson, as an employee of the defendant, Towner County. At the trial of the case, questions of negligence and contributory negligence were submitted to the jury. The jury returned a verdict against both defendants and judgment was entered on the verdict. After judgment, the defendants joined in a motion for judgment notwithstanding the verdict or for a new trial. This motion was denied in both its phases and the defendants have appealed both from the order of denial and from the judgment.

On the motion for judgment notwithstanding the verdict it was urged, that the evidence established contributory negligence upon the part of plaintiff's decedent as a matter of law, and that since the defendants were engaged in performing a governmental function at the time of the collision, they are shielded from suit by governmental immunity.

The collision occurred at about 5:30 p. m. on November 26, 1956. The day was clear and the visibility was good. The time was approximately one half hour after sunset or in the middle twilight. The defendant, Peterson, testified that it was possible to see 300 to 400 feet without lights and the witness, Mrs. Ahrentz, testified that she could see 250 to 300 feet. Immediately prior to the collision the road maintainer was proceeding southward spreading a windrow of gravel from the east edge of the highway. It was moving in the east lane of the highway or that which is ordinarily reserved for north bound traffic. The patrol was equipped with two operating lights located, one on each side of the top of the cab, nine and a half feet above the ground. The lights had been turned on about 5:00 o'clock p. m. They were focused at a point on the ground about fifteen feet ahead of the front end of the patrol. The patrol was not equipped with warning flags or colored lights of any kind.

The decedent was a farmer who resided about eleven miles north of Egeland. On the day before the collision he had driven home from Minneapolis, arriving some time after midnight or in the very early morning of the day of the accident. Between 8:00 and 9:00 o'clock of that morning he was in Cando. He left Cando some time in the afternoon and he left Egeland for his farm at about 5:30 p. m. The road north from Egeland is slightly undulating. It has shallow dips and low crests with long and moderate grades between. The dips are of sufficient depth, in some instances, to prevent the driver of a car at the low point of one dip from seeing a car at the bottom of a succeeding dip. About a half mile north of Egeland decedent passed a truck which was being driven by the witness, Hanson, in the same direction at a speed of about 40 miles an hour. Three miles north of Egeland decedent crashed head on into the county road maintainer. Just prior to the crash Peterson, the operator of the maintainer, had stopped it and taken it out of gear. As a result of the crash the whole front end of decedent's car was telescoped as far back as the rear of the from seat and the maintainer which weighed 15 tons was moved about three feet.

At the time of the collision the maintainer was located at the bottom of one of the low spots in the road. The road was 31 feet wide and it was 18 feet from the west side of the maintainer to the west shoulder of the road. Peterson, the only surviving eye witness to the collision testified that he saw the lights of the approaching car for a considerable distance; that, when the car was 300 to 400 feet away, he came to the conclusion that a collision was bound to happen and, for that reason, stopped the maintainer and took it out of gear. He testified that decedent made no attempt to turn or avoid the collision or reduce his speed but came straight on as if he hadn't seen the maintainer. After the crash Peterson stepped down from his cab and went forward to see who was in the automobile that had struck his machine. He then turned to the north and saw the Ahrentz car approaching from that direction at a distance of about a half mile. He signaled the Ahrentz car and it stopped beside the road maintainer. At about the time the Ahrentz car stopped, Mr. Hanson in his truck came over the top of the knoll to the south. He saw the light from the maintainer shining upon the wreck and the lights of the Ahrentz car, which was then blocking the way around the maintainer to the west. Hanson, however, had no difficulty in stopping his truck, and he testified that it was 25 to 30 rods from the top of the knoll to the stop where the collision occurred. Both Peterson and the highway patrolman, who arrived at the scene an hour after the collision, testified that they examined the highway for skid marks that might have been left by the decedent's car and found none. Mrs. Ahrentz testified that she was proceeding south with her lights on low beam and that when she was about 400 feet north of the scene of the accident she saw " * * * the car jammed against the patrol, and a man standing there with his hand up asking us to stop." She did not see or hear the crash.

■ Upon this record defendants assert that plaintiff's decedent was negligent as a matter of law and that his negligence contributed proximately to cause his injury and death. Questions of negligence and contributory negligence are questions of fact for the jury unless the evidence is such that reasonable men can draw but one conclusion therefrom. Rettler v. Ebreck, N.D., 71 N.W.2d 759; McCullagh v. Fortune, 76 N.D. 669, 38 N.W.2d 771; Olson v. Kem Temple, 78 N.D. 263, 49 N.W.2d 99. Is there any reasonable hypothesis, consistent with the proof, which will explain the collision without the necessity of imputing contributory negligence to the decedent? If there is, the question was one for the jury.

■ As a possible reasonable inference from the testimony the plaintiff suggests that decedent's view of the lights of the road patrol, before he topped the crest of the hill, would be confusing; that it would be reasonable for him to assume that they were the lights of a car approaching in its proper lane from a considerable distance and that in the circumstances, he could be excused for not seeing the patrol until he was too close to avoid the collision. The fallacy in this view of the testimony lies in the fact that not only the lights of the grader, but the grader itself and the bright spot on the road in front of the grader, upon which its lights were focused, were all within the range of decedent's vision for a distance of 400 to 500 feet before he reached the point of collision. The highway was perfectly straight and there was a clear way of passage 18 feet wide to the west of the patrol. In these circumstances it is inconceivable that the decedent, had he been alert, maintaining a watchful lookout, and driving at a reasonable speed, as it was his duty to do, would not have seen and recognized an obstacle in his path of travel when he was 400 feet away or 300 feet away or even 200 feet away from the patrol and have taken some positive action either by stopping or by passing to the west of the patrol to avoid or at least minimize the effect of the collision.

Plaintiff criticizes this view of the evidence upon two grounds. In the first place it is said that the witness Hanson's testimony that it was 25 to 30 rods from the top of the knoll to the site of the collision is merely an estimate and that the distance might have been much shorter and in the second place, that the passage around the patrol to the west may have been blocked by the approaching Ahrentz car. These possibilities are speculations which are wholly unsupported by any evidence. Hanson was plaintiff's own witness and his testimony as to the distance between the crest of the knoll and the scene of the accident is the only evidence as to that distance in the record. The only evidence as to the distance of the Ahrentz car from the scene, at the time of the collision, is that of Peterson and Mrs. Ahrentz. Peterson's testimony was that after he had dismounted from the patrol, gone to decedent's car to see who was in it, he turned around and saw the Ahrentz car approaching from a distance of a half mile. Mrs. Ahrentz testified that she did not see the collision, but that when she was 400 feet away from the patrol she saw decedent's car jammed up against it and a man waving his arm for her to stop. The evidence shows that one approaching the scene of the accident from the north would have a clear view for a distance of .8 of a mile. Mrs. Ahrentz said: " * * * We came over that little knoll and came upon the accident."

■ We consider it established that decedent drove his car into the county road patrol which was within the range of his vision for 400 to 500 feet before the collision without making any attempt to slow down or turn aside, that had he been maintaining a watchful lookout, he would have recognized that the patrol was an obstacle in his line of travel at a distance of at least 200 feet and that had he been traveling at a reasonable speed and maintaining a lookout he could have avoided the accident either by stopping or by passing in the open traffic lane to the west of the patrol. The facts of this case are similar to those in Billingsley v. McCormick Transfer Co., 58 N.D. 913, 228 N.W. 424. In that case the plaintiff had collided with a truck which had stopped in his lane of traffic. There was a dispute in the testimony as to whether there was a white light showing on the truck. There this court said: (58 N.D. 920, 228 N.W. 427)

"Stormy nights, dusty roads, passing vehicles, distracting circumstances, sudden emergencies, are all nonexistent. His lights were good, the car could be controlled, the road was wide and in excellent condition. The physical facts are such that no conclusion can be reached but that of carelessness, heedlessness, and negligence of the driver of plaintiff's car; that this was the real cause of the accident, or so contributed to it that without it no collision could have occurred."

Also similar is the case of Bagan v. Bitterman, 65 N.D. 423, 259 N.W. 266. In that case this court said: (65 N.D. 427, 259 N.W. 267)

" * * * plaintiff cannot recover because of contributory negligence. He stated his lights were in good shape, and lighted the road for a distance of 200 feet. He was traveling at a rate not to exceed 25 miles per hour. He was keeping a lookout and yet he did not see the truck until he was upon it. Others testified they saw the truck for about 100 feet ahead. Either he was driving at an excessive rate of speed or was not driving carefully or his lights were poor or he was not keeping a lookout. There was no object to obscure his vision."

See also Schaller v. Bjornstad, 77 N.D. 51, 40 N.W.2d 59; Doll v. Treiber, N.D., 76 N.W.2d 910.

■ While we are of the view that the undisputed evidence establishes that decedent had sufficient time and distance within which to avoid the accident after **he**

had traversed the knoll immediately to the south of the spot where the collision occurred, nevertheless, we believed we should point out that, had decedent's view been obstructed at any time within 100 feet, his speed, which was established to be in excess of 40 miles an hour, would have been illegal. The law, relating to speed limits, in force at the time of the accident, was Chapter 254, Laws of N.D.1955. Sub-section 4 of Section 1 of this act provides that it shall be unlawful for any person to exceed a speed of "Twenty miles an hour in traversing * * * a grade upon a highway when the driver's view is obstructed within a distance of one hundred feet along such highway in the direction in which he is proceeding."

The record in this case is such that we can conceive of no reasonable explanation of the collision between decedent's car and the county patrol from which negligence of the decedent as a substantial contributing factor can be eliminated. Since the judgment in this case cannot stand because of the contributory negligence of plaintiff's decedent, it is unnecessary for us to consider any of the other questions raised on this appeal. The judgment of the district court is therefore reversed and the case remanded with directions to enter a judgment of dismissal in favor of the defendants.

SATHRE, C. J., and MORRIS, J., concur.

### On Rehearing

PER CURIAM.

A rehearing was granted in this case. After a re-argument and a reconsideration of all of the issues, we adhere to the opinion heretofore filed in this case.

SATHRE, C. J., and BURKE, MORRIS, STRUTZ and TEIGEN, JJ., concur.