Patricia SERBOUSEK, for the use and bene-
fit of herself and Douglas James Serbou-
sek and Rodney Alan Serbousek, minors,
Plaintiff and Respondent,

v.

STOCKMAN MOTORS, INC., a North Da-
kota corporation, and George Atol,
Defendants and Appellants.

No. 7903.

Supreme Court of North Dakota.

Dec. 12, 1960.

Rehearing Denied Jan. 9, 1961.

880

Davidson & Whisenand, Williston, and Conmy, Donahue & Conmy, Bismarck, for plaintiff and respondent.

Bjella, Jestrab, Neff & Pippin, Williston, for defendants and appellants.

MORRIS, Judge.

The plaintiff brought this action for the use and benefit of herself and her two minor children to recover damages arising from the alleged wrongful death of her husband, Rodney A. Serbousek, which she claims was caused by the negligence of the defendant George Atol, the agent of the defendant Stockman Motors, Inc. The death resulted from a motor vehicle accident that took place February 7, 1959 at about ten o'clock p. m. on U. S. Highway No. 2 at a point in Williams County approximately 2.2 miles east of the city of Ray.

As defenses to the plaintiff's action the defendants deny negligence on the part of Atol and allege that the accident which resulted in the death of Rodney A. Serbousek was caused solely and proximately by his own negligence or that in any event his negligence contributed proximately thereto. Atol also counterclaimed for damages re-

sulting from personal injuries he received in the accident and Stockman Motors, Inc. counterclaimed for damages to its truck which was being driven by Atol at the time the accident occurred. The case was tried to a jury which rendered a verdict for substantial damages in favor of the plaintiff upon which judgment was entered against both defendants. The defendants made a motion for a judgment notwithstanding the verdict, which was denied. They appeal from both the judgment and from the order of the trial court denying the motion for judgment notwithstanding the verdict.

■ There are no challenges to the instructions of the court or rulings on the admission of evidence. The only issues on this appeal are the sufficiency of the evidence to sustain the verdict with respect to the negligence of the defendant George Atol and the contributory negligence of the deceased. We have repeatedly stated that negligence, whether contributory or primary, is a question of fact for the jury unless the evidence is such that reasonable minds can draw but one conclusion therefrom. Olson v. Cass County Electric Co-operative, Inc., N.D., 94 N.W.2d 506. In reviewing the evidence we consider it in the light most favorable to the verdict. Leonard v. North Dakota Co-op. Wool Marketing Association, 72 N.D. 310, 6 N.W.2d 576; Stadick v. Olson's Hardware, N.D., 64 N.W.2d 362; Geier v. Tjaden, N.D., 74 N.W. 2d 361; Quam v. Wengert, N.D., 86 N.W.2d 741; Doll v. Treiber, N.D., 76 N.W.2d 910.

On February 7, 1959 George Atol was in the employ of Stockman Motors, Inc. of Williston, North Dakota. For some time he had been night driver of a truck owned by his employer with which he performed wrecker and towing service. At about nine o'clock in the evening he was requested by a state highway patrolman to pick up a vehicle along U. S. Highway No. 2 near Ray, North Dakota. This vehicle was a disabled Plymouth automobile standing on the shoulder of the highway facing west. After receiving the call, Atol secured the

assistance of McLean, a fellow employee. Both men left the place of business of Stockman Motors, Inc. shortly after nine o'clock and drove to where they saw the disabled Plymouth car. The time was then about ten o'clock. They were driving east and proceeded a short distance beyond the disabled car to where there was a graded approach to the highway which led into a field immediately to the north. Atol was driving. He turned to the left across the north or westbound lane of the highway and part way into the approach, where he stopped, shifted gears and started to back up his vehicle. His companion, McLean, uttered a warning exclamation which caused Atol to put on his brakes and stop. McLean testified that before he and Atol made the turn to the left across the highway the witness looked to the east, in which direction he had a clear view of eight-tenths of a mile, and saw no lights that he could recollect. The record then shows the following cross-examination:

"And then as I understand it, after the truck was turned so that it was headed north and just as you started to back up, not before, but just as you started, you did look to the east again, is that right? A. Yes, sir.

"Q. And at that time you did see the light of the car and you hollered, 'George'? A. Yes, sir.

"Q. And he immediately stopped his truck? A. Yes, sir.

"Q. And in the instant following the stopping of the truck you thought this car would go around you, didn't you? A. Well, as it gets closer it looks like it is going by.

"Q. If you thought it was going by you thought your truck was pretty well clear of the highway, did you not? A. No, sir, I didn't know for sure it was, it just looked like it was going by.

"Q. As a matter of fact, when you saw it it was just an instant before

the impact, wasn't it? A. It seemed like that, yes, sir.

"Q. A matter of a split second? A. It was awfully fast.

"Q. I believe you described it before, just a flash of light, then the impact? A. Yes, sir. * * *

"Q. You know and will concede as a sane matter of fact, would you not, Mr. McLean, that had you looked before you started to back up that car was necessarily in sight? A. I suppose it was, I do not know.

"Q. And what occurred really was you started to back up and there was the car right upon you, isn't that true? A. I would say it was not right upon us, I do not know how far off it was.

"Q. In all events you backed up right into its path did you not? A. I would say no.

"Q. Well, you know its proper path was in the westbound or north lane of the highway? A. It was in that lane, yes, sir.

"Q. You know now from the facts you learned afterwards that it remained in its proper lane? A. Yes, sir.

"Q. So will you not concede you backed up right in front of its path? * * * A. We backed into its path, not right into it."

The truck that Atol was driving had two axles with dual wheels on the rear axle. It was equipped as a wrecker, was about 18½ feet long, with the cab over the engine. The traveled portion of the highway was blacktop about 24 feet wide and was clear of snow. The adjacent shoulders of the highway and the fields' on either side were snow-covered. The truck was equipped with two headlights, two taillights, two clearance lights on each side of the cab, and also had a blinker light on top which shone to the front and to the back but did not revolve. The blinker light was separately controlled by a toggle switch on the dashboard. Atol and McLean testified that Atol turned on the blinker light which was located on top of the cab when he turned on the light signaling the left turn into the approach. When the first car arrived at the scene a few minutes after the accident the blinker light was not operating. It was switched on shortly after arrival at the suggestion of one of the men in that car, and when switched on the blinker light operated. Atol testified that when he made the left turn he did not go far into the approach on account of snow, that the front end of the wrecker extended five or six feet into the approach, and that the rear portion of the wrecker blocked all or most of the westbound traffic lane.

From where Atol was seated in the cab he had a clear view along the highway to the east a distance of seven-eighths of a mile. According to his testimony after he turned to the left into the approach he stopped, shifted gears, looked and backed up, and that when McLean "hollered there was a light I stepped on the brake." In about a second the impact took place.

With respect to the position of the wrecker, we quote from Atol's testimony:

"Q. You mean you stopped in the first place blocking the entire westbound lane? A. Yes.

"Q. And then you backed up and you blocked part of the other lane, is that right? A. We blocked part of the other lane to start with, I suppose.

"Q. You are telling us now that in attempting to make this turn around you were attempting to make it without even driving out any distance into this approach, is that right? A. We couldn't for ice and snow.

"Q. Well, you didn't try to, did you? A. We went as far as we dared, yes.

"Q. You dared go into the 2 inches of snow with the front wheels of a truck, is that right? A. Yes.

"Q. How much did that truck weigh, if you know? A. Oh, approximately 10,000 pounds.

"Q. And you had traction with 4 rear tires, did you not? A. Yes.

"Q. And you could have gone at least 16 feet still forward and still had your rear end on the shoulder of the north road if what you tell us, that's right isn't it? A. Yes, it would be a little off where there was snow.

"Q. But you would be on the north shoulder of the road with your rear wheels? A. It's possibly (possible) but I didn't get out to see how far I was or how far out I was.

"Q. So that not only you didn't even clear the road when you could have when you made the turn, isn't that correct, made the left turn? A. The reason we didn't drive in it was because them other cars was stuck in there and towed out of there.

"Q. Did you see any other cars stuck there? A. No, we seen the tracks.

"Q. You don't know how they got there, whether they were laid there with somebody backing out or not, do you? A. No, I don't.

"Q. Well, you did back up didn't you? A. Started to move back, yes.

"Q. And then being warned of a flash of light coming east you stopped dead right in the path of all traffic, didn't you? A. Yes."

Section 39–1047 1957 Supplement to ND RC 1943 provides in part:

"Upon any highway outside of a business or residence district no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main-traveled part of the highway when it is practicable to stop, park, or so leave such vehicle off such part of said highway, * * *."

Section 39–1052 1957 Supplement to ND RC 1943 provides that:

"The driver of a vehicle shall not back the same unless such movement can be made with reasonable safety and without interfering with other traffic."

Two photographs were before the jury showing a highway patrol car, of approximately the same length as the wrecker, standing facing north in the approach and entirely off of and clear of the driving surface of the highway. The photographs were made a day or two after the accident when the same conditions still prevailed. There appears to be very little snow about the wheels of the patrol car.

■■ The evidence is ample to warrant the jury in determining that the driver of the wrecker was negligent in failing to drive farther off of the traveled portion of the highway before attempting to back up and turn around and that he was also negligent in failing to ascertain that the backward movement could be made with reasonable safety and without interfering with other traffic. The jury was fully justified in determining that the negligence of the defendants was a proximate cause of the death of Rodney A. Serbousek.

■ Contributory negligence is an affirmative defense. The burden of proof rests on the defendants. Olson v. Cass County Elec. Co-op., Inc., N.D., 94 N.W.2d 506. The defendants contend that not only have they sustained the burden of proof with respect to contributory negligence but that the evidence establishes as a matter of law that the deceased was guilty of negligence that contributed proximately to the accident that caused his death and that

recovery is therefore barred. We examine the evidence further in the light of this contention.

The deceased was fatally injured when his car crashed into the side of the wrecker. At the time the accident happened the night was dark, the atmosphere was clear, the visibility good, and the temperature about 15 degrees below zero. The highway had a driving mat of blacktop 24 feet wide which was free of ice and snow. The body of the wrecker was white. The cab was a dark color. There was a covering of snow on the shoulders of the road and adjacent fields. The highway runs east and west. The defendant Atol was driving the wrecker truck east, turned on his signal lights indicating a left turn, and drove across the north or westbound traffic lane and onto a field approach on the north side of the highway. This approach was about 25 feet wide and was somewhat wider where it joined the highway. Atol stopped his truck, which was about 18½ feet long, with the front end in the approach and the back end extending out across most if not all of the westbound lane. The driver shifted gears, which took about a minute due to some defect in the shifting mechanism. He started to back up when he was warned of an approaching car by an exclamation of his companion, McLean. He stopped after he had backed up four or five feet. Almost instantly or within about a second after he stopped, Serbousek, the deceased, coming from the east and driving a Chevrolet automobile, crashed into the right side of the body of the truck just behind the cab. From the point of impact there was no impediment to visibility for a distance of about eight-tenths of a mile. The point of impact was fixed by a highway patrolman, without objection, by a gouge mark two feet, four inches north of the center line of the highway. The impact forced the truck about 32 feet to the west where it came to rest about half-way across the center line. A skidmark of the left wheels of the Chevrolet began about on the center line of the highway 72 feet east of the

point of impact and followed the center line to that point. A skidmark of the right wheels of the Chevrolet began about 82 feet east of the point of impact. The nature of the skidmarks is not described.

The driver and his companion testified that the blinker lights were turned on before the left turn was made. However, an inference to the contrary arises from the fact that persons arriving at the scene immediately after the accident found that the blinker lights were off and caused them to be turned on. The night speed limit on the highway was 55 miles per hour. Chapter 254, Session Laws N.D.1955 as amended by Chapter 264, Session Laws N.D.1957.

The trial court instructed the jury that:

"The 'rule of safety' is the rule that one must drive at such a speed as to be able to stop within the assured clear distance ahead. The word 'assured' means with reasonable certainty rather than absolute certainty. In order to comply with this rule, the driver of a motor vehicle must not operate it at a greater speed than will permit him to bring it to a stop within the distance between his vehicle and a discernible object obstructing his path or line of travel, unless this assured clear distance ahead is suddenly cut down or lessened, without his fault, by the entrance within such distance and into his line of travel of some obstruction which renders him unable, in the exercise of ordinary care, to avoid colliding therewith. The distance that a driver can see ahead of him is shortened at night in the dark, and he should therefore drive more slowly after nightfall, and must be able, as a general rule, to stop within the range of his headlights for such obstructions as an ordinarily careful driver would see."

The defendants contend that the evidence establishes, as a matter of law, that the violation of this rule by the deceased was a proximate cause of his death, and that

contributory negligence thus established must bar recovery. This rule was, in substance, first considered by this court in Axelson v. Jardine, 57 N.D. 524, 223 N.W. 32, 36. The action was one for personal injuries and property damage that occurred when a car driven by one of the plaintiffs fell into an excavation which had been made for a culvert. It was 50 feet long, 4 feet deep and 4 feet wide, extending across the road. The dirt from the excavation was piled on either side of it. The plaintiff driver testified he saw the dirt in the road and thought it was a raise in the road, as though it had been newly surfaced. His car ran against the loose dirt and fell into the excavation. It was contended that the plaintiff was guilty of contributory negligence. This court held that it was not necessary for the trial judge to instruct on the rule of safety because the driver saw the dirt when he was from 50 to 75 feet from it and could have stopped the car within 15 feet at the rate of speed he was driving but did not do so for the reason that the dirt in the road looked to him like a newly-built-up road. He did not know the ditch was there and could not see it until the car fell into it. The court stated:

"The rule contended for by appellant does not apply in this case, for reason that the driver could have stopped the car within the distance he could see, and the question of whether the plaintiff was negligent or not in not stopping the car, when he could have stopped it within the distance he could see, was for the jury under all the facts and circumstances."

In Billingsley v. McCormick Transfer Co., 58 N.D. 913, 228 N.W. 424, 427, we held that the plaintiff could not recover because he was guilty of contributory negligence as a matter of law. The car he was driving collided with a van that was parked on the right side of the road. The court pointed out that:

"Stormy night, dusty roads, passing vehicles, distracting circumstances, sudden emergencies, are all non-existent."

In Bagan v. Bitterman, 65 N.D. 423, 259 N.W. 266, 267, it was held that the contributory negligence of the plaintiff, who had driven his car into an unlighted truck, was shown by the physical facts. Billingsley v. McCormick, supra, was cited. This court quoted from Garrison v. City of Detroit, 270 Mich. 237, 258 N.W. 259, as follows:

"The cases dealt with large objects, such as other motor vehicles, easily seen, and on the open road. A driver must anticipate such objects, lighted or unlighted, carefully or negligently driven or parked, and guard against collision with them. He must see such obstruction as a careful person would have seen."

In that case the Supreme Court of Michigan said that the rule above quoted did not apply to a motorist who had collided with an unlighted, abandoned signal device in the center of intersecting streets of a city on a rainy night while driving about 20 miles per hour. It was there held that the motorist's contributory negligence was a question for the trier of facts.

In Schaller v. Bjornstad, 77 N.D. 51, 40 N.W.2d 59, 60, the driver of an automobile with no taillight stopped after dark near the edge of the highway with the car standing largely on the paved portion. A truck approaching from the rear collided with the automobile and both vehicles were damaged. A number of authorities are cited, including Bagan v. Bitterman, supra, and Billingsley v. McCormick, supra. This court stated in the syllabus these principles:

"The driver of a motor vehicle whose vision is obscured by atmospheric conditions such as fog or rain must exercise care commensurate with the situation. A person driving a motor vehicle at night and finding himself

blinded by glare of light is bound to exercise care commensurate with the situation to avoid inflicting injury on others who may be using the street or highway while he is thus unable to see what is before him."

Applying these principles to the evidence and the physical facts and circumstances it was held that the driver of the car and the driver of the truck were both negligent and that their concurrent acts caused the collision.

Lostegaard v. Bauer, 78 N.D. 711, 51 N.W.2d 761, was an action brought by the plaintiff for personal injuries and damage to her automobile resulting from a collision at night between the automobile, driven by the plaintiff, and the defendant's truck that was parked on the highway without lights or warning. The plaintiff recovered a judgment and the defendant moved for a judgment notwithstanding the verdict, which was denied. In affirming the action of the trial court we stated in the syllabus that:

"No hard and fast rule can be laid down to determine whether a motorist was guilty of contributory negligence in failing to stop or to turn aside to avoid a collision with a stationary vehicle obstructing the highway. The facts and circumstances of each particular case must be considered."

In the opinion we said:

"The case at bar shows a steady flow of traffic both ways, bright lights, distracting circumstances and sudden emergencies, none of which were existent in the Billingsley, Bagan and Schaller cases. Those circumstances clearly differentiated the instant case from those cases."

In Spenningsby v. Peterson, N.D., 67 N.W.2d 913, we held that a plaintiff's employee was not guilty of contributory negligence as a matter of law where the employee was driving in a snowstorm at a speed of 15 miles an hour when a sudden increase in the density of the squall reduced his visibility and he immediately commenced to reduce his speed but suddenly came upon a truck parked in the middle of the highway which he saw too late to avoid a collision. We held that the principle of sudden emergency arising when the driver is temporarily blinded that we applied in Lostegaard v. Bauer, supra, was likewise applicable to the Spenningsby case.

In Doll v. Treiber, N.D., 76 N.W.2d 910, we held that judgment notwithstanding the verdict should have been granted where an automobile was driven against the rear end of a truckload of hay although the truck had no taillight. We pointed out that there were no circumstances that gave rise to sudden emergency such as dust or passing vehicles except one vehicle that had gone by, and that there was no reason why with the exercise of due care the plaintiff should not have seen the truck and brought his car under control to avoid the collision or enable him to pass under the conditions that then existed.

We recently held that the contributory negligence of the deceased barred recovery on the part of the widow-plaintiff in Cose v. Towner County, N.D., 102 N.W.2d 538, 540. The deceased's death resulted from the collision of the car that he was driving with a caterpillar propelled road maintainer that had been proceeding slowly toward the deceased in his lane of traffic. The driver of the maintainer had stopped just prior to the crash. The visibility was good, the time was approximately a half hour after sunset. The car and the maintainer lights had been turned on. The road was straight and without obstruction. It was argued that it could be reasonably assumed that the lights of the maintainer mounted at the top of the cab could be mistaken for lights of a car approaching in its proper lane from a considerable distance and that under the circumstances the deceased could be excused for not seeing the patrol until too close to avoid the collision. We stated that:

"The fallacy in this view of the testimony lies in the fact that not only the lights of the grader, but the grader itself and the bright spot on the road in front of the grader, upon which its lights were focused, were all within the range of the decedent's vision for a distance of 400 to 500 feet before he reached the point of collision."

We further said:

"The record in this case is such that we can conceive of no reasonable explanation of the collision between decedent's car and the county patrol from which negligence of the decedent as a substantial contributing factor can be eliminated."

While the facts in the Cose case and the one at bar have points of similarity, there are important fact differences. In the Cose case the maintainer had been proceeding slowly toward the deceased, while in this case the wrecker made a left turn on signal across the decedent's traffic lane less than two minutes prior to the crash. It was a two-colored vehicle, with a dark cab and white body. It stopped with the cab resting largely in the approach and the white body extending directly across the decedent's lane. The fields and shoulders of the highway were snow-covered. The driving lane was black. The lights of the maintainer shone in the direction of the decedent's approach and lighted a spot on the road in front of the maintainer. Although the wrecker was lighted the lights did not shine in the direction of the approaching decedent and its headlights necessarily shone off into the field north of the highway. There was no movement of the maintainer across the path of the decedent. The wrecker backed up a distance of four or five feet as the decedent approached within about a second of the collision. The decedent's car struck the white body of the wrecker at which time he was driving with his left wheels approximately on the center line of the 24-foot driving lane. When we consider these differences the Cose case loses much of its weight as a precedent in the case at bar.

North Dakota has no statutory rule of safety. The formulation, adoption and application of the rule depends upon our court decisions. The facts in this case gave rise to the rebuttable presumption that because of the instinct of self-preservation one who has suffered death by accident was at the time of injury exercising due care for his own safety. Quam v. Wengert, N.D., 86 N.W.2d 741. See Hausken v. Coman, 66 N.D. 633, 268 N.W. 430. The court, in an unchallenged instruction, advised the jury of this presumption.

Expert testimony tending to support the defendant's contention of excessive speed on the part of the decedent was introduced. It was based upon the length of the skidmarks, the comparative weights of the wrecker and the Chevrolet, and the distance that the wrecker was moved by the impact. The weight to be given to this evidence was a matter for the jury to determine under the physical facts, the circumstances and other evidence in the case. It was not binding on the jury nor does it require us to determine as a matter of law that the defendant's speed was excessive. Reid v. Ehr, 43 N.D. 109, 174 N.W. 71, 6 A.L.R. 586.

Under the evidence in this case whether the deceased was guilty of negligence that contributed proximately to the accident and consequently to his death is one upon which the minds of reasonable men may differ. The determination of that question is one of fact lying wholly within the province of the jury and is not one which we may determine as a matter of law. The judgment and the order appealed from are affirmed.

SATHRE, C. J., and BURKE, TEIGEN and STRUTZ, JJ., concur.